GERTRUDE MOONEY, Administratrix of the Estate of NEIL P. MOONEY, Deceased, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation.—No. 39202.—186 S. W. (2d) 450.

Division Two, March 5, 1945.

Rehearing Denied or Motion to Transfer to Banc Overruled, April 2, 1945.

*Joseph A. McClain, Jr.,* and *Arnot L. Sheppard* for appellant.

*Wilbur C. Schwartz* and *Chelsea O. Inman* for respondent.

1084

1086

WESTHUES, C.—Gertrude Mooney, administratrix of the estate of her deceased husband, Neil P. Mooney, obtained a verdict in the sum of $55,000 against appellant, Terminal Railroad Association. The trial court required a remittitur of $10,000 and entered a judgment for $45,000. The Terminal Railroad Association appealed.

This is the second appeal in this case. The opinion on the first appeal will be found reported in 176 S. W. (2d) 605, 352 Mo. 245. The judgment was reversed and the cause remanded for retrial because of improper argument to the jury by plaintiff's counsel. Plaintiff's cause of action was based on the Federal Employers' Liability Act, 45 U. S. C. A., sec. 51, etc. The deceased, plaintiff's husband, lost his life on November 28, 1939, at about 4:30 P. M., while working as a switchman in the Terminal yards at St. Louis, Missouri. The deceased was a member of a five man train crew which included a switch foreman, engineer, fireman and two switchmen. The deceased was referred to as a field switchman. About 4:00 P. M., November 28, the crew began its work of switching cars in the yards at Seventh street. The deceased lost his life when an engine ran over him while the crew was attempting to make what is ordinarily understood as a flying switch. Tracks designated as numbers four and five ran in easterly and westerly directions at that point. Track number four was south of track number five and was connected therewith by a track called a crossover. The switch movement in which Mooney lost his life may be briefly described as follows: The engine, facing ▮▮▮ west with a boxcar attached to the front end, was moved to track number four about one hundred feet west of the crossover, between tracks four and five. The crew intended to place the boxcar on track number four east of the crossover switch and against cars standing thereon. The deceased and the switch foreman had alighted from the engine on the north side of track number four and west of the switch. It was the duty of the deceased to take his place at track four east of the switch, about where the boxcar was to be set, and to block it so as to keep it from rolling back over the switch. There was a slight down grade westward. Deceased received his instructions from Luthy, the foreman, and started toward his position. To get there it was

necessary for him to cross over the track at some point east of the engine. Luthy signaled the engineer to make the flying switch. When the engine had attained proper speed permitting the boxcar following it to roll of its own momentum to its destination, the speed was checked to permit Bauer, who was riding at the front of the engine, to lift the pin from the coupling. Bauer did so and the speed of the engine was then accelerated so as to leave the car and pass onto the crossover track. Luthy was to throw the switch so the boxcar would continue east on track number four, but as the engine was passing Luthy at the switch he noticed that Mooney was walking toward the crossover switch at track number five. Luthy testified he sensed danger and realized that if Mooney continued on his course the engine would strike him. He made no attempt to throw the switch for the boxcar but, as he testified, devoted all his attention to trying to give the engineer a signal for an emergency stop and to attracting the attention of Mooney so that he would not be hit by the engine. Luthy testified he gave the engineer the washout signal. We quote the following from his evidence:

"Q. Now, you hollered at Mr. Fuller, the engineer, didn't you, as he went by? A. I done a lot of yelling; yes, sir: I hollered to Mr. Fuller and also Mr. Mooney, to attract the attention of either one of them.

"Q. Mr. Mooney was 162 feet, well, approximately 160 feet down east of you; isn't that right? A. Yes, sir.

"Q. Mr. Fuller, the engineer was 10 feet, or 8 or 10 feet away from you, passing by in the engine; isn't that right? A. Yes, sir."

The engineer testified that he did not see Mooney but saw a signal given by Luthy when the engine was near the crossover switch at track number five and that he stopped within a space of twenty-five feet. Mooney had then been struck by the engine and it had passed over him. He died at a hospital at about 8:30 that evening. There was evidence that the engine was stopped at about the proper place it would have been stopped had the flying switch been completed.

Appellant's principal point upon this appeal is that the case was submitted to the jury under the Missouri Humanitarian Doctrine and that the federal courts do not recognize our humanitarian doctrine but apply the last chance rule. Appellant's position may be best understood by setting forth an instruction it requested but which the trial court refused. It reads as follows:

"You are instructed that although you may believe from the evidence herein that both Mooney and the railroad company were negligent at some time during the switching movement, you cannot find a verdict in favor of Mrs. Mooney unless you find that before her deceased husband was struck, he had stopped being negligent, and that after he stopped, if you so find, the defendant railroad company had an opportunity, by the exercise of ordinary care on its part, to avoid striking him.

"In this connection you are further instructed that unless the negligence, if any, of Mooney stopped a sufficient length of time before he was injured, to give the railroad company a later opportunity to avoid striking him, by the use of due care on its part, then your verdict must be for the railroad company."

Respondent insists that the case must be governed by the federal statute and that the distinction between the humanitarian doctrine and the last chance rule has no bearing on the case. We are of the opinion that respondent's position is correct. We so held on the former appeal. See Mooney v. Terminal R. Assn. of St. Louis, 352 Mo. 245, 176 S. W. (2d) 605, l. c. 607, etc., where the question was discussed at length. Appellant, however, earnestly insists that the opinion is not in harmony with the federal cases. We have again examined the question and we adhere to our ▮ former ruling. It, therefore, will not be necessary to review the question again. We approve the discussion on this point in the former opinion where the federal cases were analyzed.

That appellant may understand what this court deems the rule to be we will attempt to state it as applicable to the present case. It was conceded that Mooney when fatally injured came within the protection of the federal act under discussion. The vital questions, therefore, before the trial court and jury were whether the defendant's agents and servants were negligent and if so whether such negligence in whole or in part contributed to Mooney's injury. An affirmative answer to both questions establishes liability. Whether the facts as proven fit the pattern of the humanitarian doctrine as recognized by the Missouri courts or whether the facts fit the pattern of the last chance rule has nothing to do with the case. The federal act does not make any exception, nor should one be read into the law by the courts. The law provides that appellant shall be liable for Mooney's death if it resulted, "in whole or in part from the negligence of" its employees. Appellant's refused instruction clearly stated the rule to be that even though the negligence of the defendant's employees may have contributed to Mooney's death, yet if Mooney's negligence continued up to the time the engine struck him then defendant was not liable. That is not the law and this court's ruling on that point in the former opinion is correct and is hereby reaffirmed. See also Moran v. Atchison, T. & S. F. R. Co., 330 Mo. 278, 48 S. W. (2d) 881, l. c. 882 (2d). The question of whether Mooney's negligence could have been interposed in mitigation of the damages was not made a point in this case and need not be discussed.

▮ Appellant in its brief states:

"It may be said at the outset that appellant's position is that it was guilty of no negligence of any kind, that decedent was guilty of negligence; not contributory negligence, but sole negligence, and that his sole negligence was the direct and proximate cause of his death."

The question of whether deceased's negligence was the sole cause of his death was submitted to the jury by an instruction requested by the defendant. The jury found against defendant on that issue and that finding is binding on us. The question of whether there was substantial evidence to support the verdict was presented on the former appeal and decided adversely to appellant. See 352 Mo. 245, 176 S. W. (2d) 610 (11, 12). The evidence in the second trial was substantially the same as in the first. We notice, however, that on the first trial Luthy testified that he noticed the engineer looking eastward as the engine was passing the switch stand where Luthy was stationed. At the second trial he did not so testify. That, however, does not materially affect the merits of the case. The engineer testified that he did look east. Note his evidence:

"Q. Well, at the time you passed, at the time you passed Mr. Luthy, which way were you looking? A. I was looking east to see if I was on a clear track."

Luthy testified that as the engine passed him he sensed the danger to Mooney and tried to signal the engineer to stop. We also desire to call attention to the fact that the engineer stated he saw Mooney when Mooney was near Luthy before the switch movement was begun. The engineer then knew that Mooney must at some time cross the track east of the engine to get to his proper place for the purpose of blocking the boxcar. Again the engineer testified as follows:

"Mr. Schwartz: Now, Mr. Fuller, I will ask you to state if it was custom in the Seventh Street Yard, on the occasion in question, if you saw somebody approaching the track, about to get on the track, to blow the whistle? A. It is, if you happen to see any obstruction.

"Q. If you saw somebody about to get on the tracks, would you blow the whistle? A. If I seen any obstruction or any party getting near the track, I would.

"Q. That was custom. I will ask you to state if there has been any change in that in the last twenty years? A. None I know of.

"Q. That has been the custom and practice ever since you have been an engineer; is that right? A. Yes, sir.

"Q. How long have you been an engineer, Mr. Fuller? A. Well, I have been an engineer close to 28 years."

The variance in the evidence of Luthy does not change the situation. There was substantial evidence to support the verdict on the theory that the engineer either saw and knew, or by the exercise of ordinary care on his part could have seen and ▮ known, that Mooney was in eminent peril and oblivious thereto and that the engineer could thereafter have avoided the injury by stopping the engine or by a timely sounding of the whistle of the locomotive. That was the theory submitted by plaintiff's instruction.

▮ The judgment for plaintiff on the former appeal was reversed and the case remanded solely on the ground that plaintiff's counsel

made an improper argument to the jury. Appellant earnestly insists that plaintiff's counsel failed to give heed to the admonition in the former opinion with reference to prejudicial arguments. It is urged that plaintiff's counsel in his argument to the jury at the last trial was guilty of making vicious, unfair and prejudicial statements which again require a reversal of the judgment. This court has had this question under consideration on a number of occasions as evidenced by the following cases: Mooney v. Terminal R. Assn. of St. Louis, 176 S. W. (2d) 605, l. c. 612, 352 Mo. 245; McGowan v. Wells, 324 Mo. 652, 24 S. W. (2d) 633, l. c. 639 (9); Hungate v. Hudson, number 39092, 353 Mo. 944, 185 S. W. (2d) 646. We have scrutinized the argument with a critical eye. Appellant urges that plaintiff's counsel, Mr. Schwartz, asked the jury to disbelieve plaintiff's witnesses and also urges that the argument was a vicious, unfair attack upon his own witnesses. In deciding this point we must consider the circumstances of the case. Plaintiff to prove her case was forced to use the members of the train crew as her witnesses, all employees of the defendant and none of whom had worked with Mooney prior to the day of the accident. The engineer testified he did not see Mooney near the track nor the signal given by Luthy until after or about the time the engine struck Mooney. How he could have failed to see either Mooney or Luthy's signal is difficult to understand. This was legitimate matter for argument. Plaintiff was entitled to the most favorable legitimate inferences to be deduced from the evidence. In the circumstances plaintiff's counsel was authorized to draw these inferences from the evidence and to comment on the evidence in conflict therewith even though such evidence came from his own witnesses. See Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47, l. c. 50 (1, 2), where the rule is stated as follows:

"A plaintiff is not conclusively bound by all of the most unfavorable testimony of his witnesses 'where there are other facts and circumstances in the case from which the jury may draw a contrary inference.' Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S. W. 764, 773; see, also, Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S. W. 2d 548.''

See also Maginnis v. Mo. Pac. R. Co., 268 Mo. 667, 187 S. W. 1165, l. c. 1167 (4).

Again appellant urges that Schwartz went beyond the rule of proper argument when he informed the jury that Mooney was looking for a block to hold the car in place at the time he was struck by the engine. A number of witnesses, including employees of the defendant, testified that it would be necessary to use a block of some kind to place on the track against the wheel of the boxcar. No witness testified that Mooney had a block. So it was not unreasonable to infer from the evidence that Mooney was looking for a block at the time the engine struck him. At the last trial no witness testified that

Mooney was looking for a block. In the opinion on the former appeal the statement was made that a witness did so testify. Schwartz was mistaken when he said to the jury that someone had so testified in the last trial. A juror expressed doubt on this subject in answer to a question, by Schwartz, addressed to the jurors. This juror, we notice, did not sign the verdict. When appellant objected the trial court made the following comment:

"The jury have heard the testimony and they will consider it as they understood and remember it to be."

On two occasions the court sustained appellant's objections. One of these was when Schwartz addressed his remarks to juror Huntington, who was the juror who had expressed doubt that Mooney was looking for a block. Counsel said:

"Now, my friends . . . I wish I could remove that doubt in your mind, Mr. Huntington (Juror No. 12) about that block or chock, but I have lived this case, I know the facts in this case that are not in evidence here. There is no doubt in my mind at all . . . ."

At this point counsel was interrupted by an objection. The court ruled: .

"The objection sustained and the remark stricken from the record and the jury are instructed to disregard it. Keep within the rules."

Defendant's counsel then asked the court to declare a mistrial and to rebuke plaintiff's counsel. The court reprimanded counsel but refused to declare a mistrial. Declaring a mistrial for improper argument rests largely within the discretion of the trial ▬ court. 46 C. J. 410, sec. 468; Kamer v. Missouri-Kansas-Texas R. Co., 326 Mo. 792, 32 S. W. (2d) 1075, l. c. 1086 (17, 18); Warnke v. Leschen & Sons Rope Co., 178 S. W. 76, l. c. 79 (4). Making personal reference to jurors, such as calling them by name and referring to them as "my friends", is highly improper and should not be tolerated. Of course, informing the jury that counsel knows something about the case not revealed by the evidence is always improper. However, in view of the prompt ruling by the trial court sustaining the objection, instructing the jury to disregard the statement and reprimanding counsel, we do not feel justified in interfering with the ruling of the trial court in refusing to grant a mistrial.

▬ We now come to the question of whether the verdict is excessive. As stated above, the verdict was for $55,000. Plaintiff was awarded $10,000 as damages on the first count of the petition for conscious pain and suffering to which Mooney was subjected. The sum of $45,000 was awarded on the second count wherein plaintiff sought actual damages for herself and her two minor children, whose respective ages were four years and six months at the time of Mooney's death. The trial court reduced the $45,000 verdict to $35,000 by requiring a remittitur. In the first opinion something was said about the verdict of $35,000, but the question of whether it was excessive

was not determined. The judgment was reversed and the cause remanded. We must determine the question now because it was preserved for our review. We have examined the following cases and have compared the amounts of the verdicts with the verdict in the present case and have also considered the situations of the parties. In Moran v. Atchison, T. & S. F. R. Co., 330 Mo. 278, 48 S. W. (2d) 881, there was a verdict for $30,000 which was sustained. Deceased's age was thirty-one, his widow was twenty-seven and one daughter was twenty-two months. In Hancock v. Kansas City Terminal R. Co., 339 Mo. 1237, 100 S. W. (2d) 570, l. c. 580 (5-7), there was a verdict for $50,000, the full amount sued for. The case was reversed because of improper argument. In Sheehan v. Terminal R. Assn. of St. Louis, 344 Mo. 586, 127 S. W. (2d) 657, the verdict was for $44,352.10. Deceased was forty-nine years of age and left a widow and an eleven month old daughter. After a remittitur the judgment was affirmed for $34,000. In Truesdale v. Wheelock, 335 Mo. 924, 74 S. W. (2d) 585, l. c. 591 (10, 11), there was a verdict for $35,000, which was affirmed after a remittitur of $5,000. The deceased was thirty-three years of age and left a widow and six minor children, ages from two to fourteen years. The court commented in that case saying the financial contribution of the deceased was not the sole measure of recovery. The above cases were all decided during the years 1932 to 1939. We have also noticed and taken into consideration comments made by this court en banc in the case of Talbert v. Chicago, R. I. & P. R. Co., 321 Mo. 1080, 15 S. W. (2d) 762, l. c. 766 (8). In the case before us Mooney and his wife were both thirty years of age. The children's ages were mentioned above. Deceased had in former years earned as high as $180.00 per month. At the time of his death and for several years prior thereto he worked for the defendant as a switchman. For about a year prior to his death he was earning $7.00 per day, but due to the slack in business and his seniority number he worked only about five days per month. He had other work, however, and his total earnings amounted to about $90.00 per month. With the passing of time his seniority would have improved and with business conditions getting better, all of which was shown by evidence in the record, he would now have been earning in excess of $200.00 per month as a switchman. Mooney's health was good prior to his injury. In considering the amount of the verdict we must take the evidence as most favorable to plaintiff. Webb v. Missouri-Kansas-Texas R. Co., 342 Mo. 394, 116 S. W. (2d) 27, l. c. 30 (7, 8) and cases there cited. The question of the amount of damages is primarily for a jury. It is apparent from the above cases that the appellate courts do attempt the difficult task of trying to harmonize verdicts. However, unless a verdict is grossly excessive or inadequate courts should not interfere. In this case the trial court seriously considered the question of whether the verdict was excessive. This is evidenced by the order of remittitur.

Taking into consideration the above cases, the economic conditions existing at the time those cases were decided and the conditions that now prevail, the age of Mooney at the time of his death, his life expectancy and the widow and two small children, we cannot say that $35,000 is so excessive as to authorize our interference. O'Donnell v. Baltimore ██ & Ohio R. Co., 324 Mo. 1097, l. c. 1113, 26 S. W. (2d) 929, l. c. 936 (22).

With reference to the verdict of $10,000, on the count representing pain and suffering endured by Mooney, the evidence shows that Mooney was conscious up to the time of his death and that he suffered extreme pain and anguish. In order to disturb that verdict we would be forced to overrule the opinion by this court en banc in the case of Talbert v. Chicago, R. I. & P. R. Co., supra. See also Noce v. St. Louis-San Francisco R. Co., 337 Mo. 689, 85 S. W. (2d) 637, l. c. 643 (9, 10). Under the rulings of those cases the verdict was not excessive.

The judgment is affirmed. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.