GERTRUDE McGARVEY, Respondent, v. THE CITY OF ST. LOUIS, a Municipal Corporation, Appellant.—No. 40902.—218 S. W. (2d) 542.

Division One, February 14, 1949.

Rehearing Denied, March 14, 1949.

*George L. Stemmler, Harry R. Stocker* and *John P. McCammon* for appellant.

*Orville Richardson* and *J. O. O'Connell Hough* for respondent.

[543] BRADLEY, C.—Plaintiff (respondent) was injured when she stepped into a hole in the sidewalk and curbing as she started to

step from the street to the sidewalk at 2201 North Broadway, St. Louis. She recovered a verdict and judgment for $10,000.00. Defendant's motion for a new trial was overruled, and this appeal followed.

Plaintiff alleged that the sidewalk and curb were defective and unsafe; that defendant had permitted the curb and sidewalk to become unsafe, and had failed to inspect and correct, although it knew or should have known thereof in time to have remedied prior to plaintiff's injury. Defendant's answer was, in effect, a general denial of the charges of negligence and a plea of contributory negligence.

Error is assigned on plaintiff's instructions Nos. 1, 2, and 12, and on an alleged excessive verdict.

It will not be necessary to make an extended statement as to the facts. Plaintiff, a sewing machine operator, was employed at the time of injury by the Karol Kell Garment Company; she was injured about 6 :45 a. m., January 29, 1946. On that morning plaintiff's husband drove her part of the way to her work. He stopped the automobile at the west curb of North Broadway (a north and south street) a short distance north of Clinton Street. Plaintiff intended to there catch a southbound street car on Broadway. After alighting from the automobile she walked north to the rear of the automobile; "it was smoky and foggy"; was still dark; street lights on. Plaintiff testified, "I walked back of the car (automobile) there and prepared to step onto the curbing and when I did, there wasn't any curbing there, and my left foot went into this hole and because I was not ready to step, it threw me with my full weight (about 180) on my left knee." The hole (chunk out of the curb and sidewalk) was 27 inches long, 6 inches deep, and 10½ inches wide.

Defendant says that plaintiff's instruction No. 1, "while requiring a finding that a hole existed in the sidewalk and curbing and that they were in a dangerous and unsafe condition; does not require a finding that knowledge of such defect be brought home to defendant in time for it, in the exercise of ordinary care, to have repaired the same prior to the date of the injury"; that the instruction "does not require a finding that the defendant knew, or should have known, of the defect in time to have repaired it before the date on which plaintiff was injured, but improperly directs a verdict for plaintiff if defendant thereafter, that is, after plaintiff was injured, could have repaired the curbing and sidewalk."

In view of the character of complaint on instruction No. 1, we set it out. It follows: "The court instructs the jury that under the law it was the duty of the defendant city to exercise ordinary care to maintain its public sidewalks and curbings in a reasonably safe condition for the use and travel of pedestrians. Therefore, you are instructed that if you find and believe from the evidence that on January 29, 1946, there was a large hole in the curbing and sidewalk

in front of premises at 2201-2203 North Broadway, and that by reason thereof the curbing and sidewalk at that place was in a dangerous and unsafe condition, and that the defendant city, by the exercise of ordinary care on the part of its employees and policemen, should have known of the presence of such hole and its dangerous character in time *thereafter* to have repaired the curbing and sidewalk at that place, and that it failed so to do, and in so failing did not exercise ordinary care. Then you are instructed that the defendant was negligent, and if you further find that as a direct result of such negligence Mrs. McGarvey was caused to fall and be injured on the occasion mentioned in evidence, then [544] the plaintiff is entitled to recover, and your verdict must be in her favor and against the defendant'' (italics ours).

In support of the assignment on plaintiff's instruction No. 1, defendant cites: State ex rel. Long v. Ellison et al. (banc), 272 Mo. 571, 199 S. W. 984; Ballard v. Kansas City, 126 Mo. App. 541, 104 S. W. 1126; Moses v. Kansas City Public Service Co. et al. (Mo. App.), 188 S. W. (2d) 538; Allen v. Kansas City (Mo. App.), 64 S. W. (2d) 765.

Defendant says that ''the principal vice in this instruction lies in the fact that it directs a verdict for the plaintiff without reference to the time in relation to plaintiff's injury when the city knew, or by the exercise of ordinary care, could have known of the existence of the defect'', and that the key to the instruction is in the one word thereafter, which we have italicized. Defendant says that the rule is that notice or knowledge, actual or implied, of the presence of the hole must be brought home to defendant a sufficient length of time in the exercise of ordinary care to make repairs *prior* to the date of injury. The cases, supra, cited by defendant, support what defendant says the rule is. In the Ballard case the plaintiff was injured by tripping over a loose board in a sidewalk. The court said: ''Liability in a case of this character can arise only from negligence in not repairing the defect within a réasonable time after the city had actual notice thereof, or, by the exercise of réasonable care and diligence, might have received such notice. The instructions under consideration fail to tell the jury that defendant was entitled to a reasonable time after which the reception of actual or constructive notice in which to repair the defect, and, for that reason, are erroneous.''

In the Allen case the plaintiff slipped and fell while walking on an ice ridged sidewalk. There an instruction was held bad because it did not tell the jury that the defendant was entitled to a reasonable time after notice in which to remedy the defect. And defendant, in the present case, says that the instruction here involved has the same defect as in the Allen case. In the Moses case, supra, the plaintiff was injured by stepping into a hole in the pavement on alighting

from a motorbus. There the instruction, held sufficient, required a finding that the defect in the street had existed for such length of time before the injury that the city knew or by the exercise of ordinary care could have known of the defect a reasonable time before the injury. In the Moses case the defendant relied upon the Allen and Ballard cases. The court said [188 S. W. (2d.) l. c. 547]: "These cases and many others announce the rule that a city is entitled to reasonable time after it obtains knowledge, actual or constructive, of a dangerous condition of the street in which to repair the condition and that it is not liable until it has neglected such opportunity, and that a plaintiff's instruction, in such a case, must require the jury so to find."

Plaintiff does not contend that instruction No. 1 is letter perfect, but says that the hole in the curb and sidewalk had existed for many years (the evidence was that the defect existed before World War II) prior to plaintiff's injury, and that under such circumstances it was not necessary to submit that the defendant was entitled to reasonable time to repair, after knowledge of the defect. Plaintiff cites: Hitt v. Kansas City, 110 Mo. App. 713, 85 S. W. 669; Wilson v. City of St. Joseph, 139 Mo. App. 557, 123 S. W. 504; Barnes v. City of St. Joseph, 151 Mo. App. 523, 132 S. W. 318; Drimmel v. Kansas City, 180 Mo. App. 339, 168 S. W. 280.

These cases support the proposition that where defects, such as here, have existed for such length of time that the city can be said, as a matter of law, to have had reasonable time to learn thereof and repair, it is not necessary that an instruction require a finding that the city must have had a reasonable time to repair after learning of the defect. "But if it is uncertain how long before the accident the defective condition existed, or if there is evidence tending to show that it did not exist long enough before hand to give the city time to both learn of it and repair it, then the rule in the Pearce and Ballard cases applies, and it is necessary that the instruction should be so worded as to give the city not only reasonable time to learn [545] of the defect, but also reasonable time in which to repair it before the injury." See Drimmel case, 180 Mo. App., l. c. 354. It was held in the Hitt case, supra, that where a defect in a street had existed for nearly two years the law will presume that the city has not only had notice thereof, but sufficient time to repair.

Plaintiff says that the Ballard and Allen cases are in conflict with Barr v. Kansas City, 105 Mo. 550, 16 S. W. 483; Hebenheimer v. City of St. Louis, 269 Mo. 92, 189 S. W. 1180; Burdoin v. Town of Trenton, 116 Mo. 358, 22 S. W. 728; Hitchings v. City of Maryville, 134 Mo. App. 712, 115 S. W. 473; Irwin v. Kansas City, 173 Mo. App. 711, 160 S. W. 30; Kingsley v. Kansas City, 166 Mo. App. 544, 148 S. W. 170; Drimmel v. Kansas City, supra. It will not be necessary to enter upon the subject of conflict. It will be conceded that

it is the general rule that unless a defect, such as here, has continued for such length of time as to make proof of notice and reasonable time to repair unnecessary, such proof is required, and if required, a plaintiff should submit such issue. But here the defect, according to the evidence, had existed for at least 4 or 5 years prior to plaintiff's injury. Defendant says, however, that only plaintiff's husband testified as to the *age* of the defect and that instruction No. 1 deprived the jury of a chance to disbelieve him. We do not think that the instruction can be fairly so construed.

The jury was instructed on behalf of defendant in instruction No. 6 that even though it was found that the curb and sidewalk where plaintiff fell had a hole therein and was not in a reasonably safe condition, still plaintiff could not recover "unless you further find and believe from the evidence that such condition (if you find there was such condition) was known to said defendant City of St. Louis, or in the exercise of ordinary care, would have been known to said defendant city a sufficient length of time prior to plaintiff's fall (if you find plaintiff fell) for said defendant city, by the exercise of ordinary care, considering all the facts and circumstances in the case, to have caused said sidewalk and curb to be repaired." See also plaintiff's instruction No. 2, infra. We do not mean to imply that a plaintiff's omission of an essential element in an instruction covering the whole case and directing a verdict can be cured by a defendant's instruction embodying such omitted essential element. Such is not the rule. State ex rel. Long v. Ellison et al., 272 Mo. 571, 199 S. W. 984, l. c. 987, and cases there cited. In view of the evidence as to the length of time the defect had existed prior to plaintiff's fall, and in view of plaintiff's instruction No. 2, infra, we do not think that the defects in instruction No. 1 justify reversal, and so rule.

Is plaintiff's instruction No. 2 bad? The instruction is in three paragraphs. The first paragraph defines the city's duty to inspect curbings and sidewalks. Defendant says that the first paragraph is "a good abstract statement." The second paragraph told the jury that if found (1) that there was a large hole in the curbing and sidewalk where plaintiff fell; (2) that by reason of the hole the curbing and sidewalk were defective and not reasonably safe; (3) that defendant failed to exercise ordinary care to inspect said place prior to January 29, 1946 (date plaintiff fell); (4) that such an inspection would have revealed the defect in sufficient time for defendant, in the exercise of ordinary care, to have repaired it before January 29, 1946. Then follows the third paragraph: "And if you further find that in so failing to cause a reasonable inspection at that place to be made the defendant failed to exercise ordinary care and was negligent, and that Mrs. McGarvey fell and was injured as a direct result of such negligence, then you are instructed that she is entitled to re-

948

cover, and your verdict must be in her favor and against the defendant.''

Of the third paragraph defendant says: "The effect of the third paragraph of this instruction is to negative all that was said in the second paragraph. This is true for the reason that it directs a verdict if the jury finds that the defendant negligently failed to inspect and plaintiff was injured as a direct result of such negligence. It ignores all of the other elements so carefully set out in the second paragraph [546] and puts the entire right to recovery on a negligent failure to inspect." All the findings required in the second and third paragraphs of instruction No. 2 are in the conjunctive, hence defendant's construction and complaint are not well taken. The import of the instruction might have been more easily grasped had the second and third paragraphs been included in one paragraph, but it is unlikely that the jury got the notion that plaintiff could recover merely because defendant failed to inspect. But defendant says that plaintiff's instruction No. 2 "is in hopeless and irreconcilable conflict" with defendant's instruction No. 5. Instruction No. 5 told the jury that if found that the sidewalk and curb where plaintiff fell were in a reasonably safe condition, the city was not guilty of negligence and that the verdict should be for defendant. The reasoning here is on the assumption that instruction No. 2 permitted recovery solely for failure to inspect. And as appears, supra, such is not the case, hence there is no merit in the point on conflict.

As numbered, instruction No. 12 is plaintiff's instruction on the measure of damages. The part complained of is the third paragraph permitting recovery for impairment of ability to work. Defendant says that there is no substantial evidence to support such element of damages. Plaintiff testified that after her injury she was not able to "work as steady" at her machine as she was before. And there was evidence that her left leg would give out and that she would have to go home; that injuries to her back, leg, and knee slowed her up, prevented her from doing all of her house work. But defendant says that plaintiff's record evidence is to the contrary and shows that her ability to work was not impaired. The record evidence from her employer's records shows that plaintiff worked 1589-¾ hours in 1945, the year prior to injury; 1775 hours in 1946 (injury was January 29, 1946); and 1331-½ hours in the first nine months of 1947. Her earnings in 1945 were $2,355.60; in 1946, $2,457.58; the first nine months of 1947, $1,839.29. Plaintiff's instructor at the garment factory testified that plaintiff was a "good worker, a fast worker." Plaintiff in the brief says, in effect, that the inference is fair that except for the injury, she could have turned out more work (she did piece work) and could have increased her earnings. Plaintiff testified that her hourly earnings decreased 10 cents per hour in 1946, and this is corroborated by her work records. As appears, infra, plaintiff sustained permanent

injury and that alone is sufficient to support recovery for loss of future earnings. Dean v. Kansas City, St. Louis & Chicago R. Co., 199 Mo. 386, 97 S. W. 910; Taylor v. Terminal R. Assn. (Mo. App.), 112 S. W. (2d) 944. It was not error to submit impairment of ability to work in instruction No. 12.

Was the verdict of $10,000.00 excessive? Plaintiff was 36 years old at the time of trial (November 12, 1947). She testified that on the day of her fall she suffered pain, especially right "in the middle of my (left) hip joint" and "down the back of my left leg"; that she had suffered pain almost continuously since the fall; that her knee "is just stiff and it hurts right in the knee cap"; that she did not have pain in her left leg prior to the fall; that if she uses her leg too much, "I don't sleep for several hours after I go to bed"; that she suffers pain in her back, left leg and knee; that her condition slows her up and prevents her from doing all her housework.

Plaintiff first took chiropractic treatments, but received no improvement. She was later examined by Dr. Harry L. Thieme, an M. D. Dr. Thieme saw plaintiff on June 8, 1946, and on April 19, and November 7, 1947, a few days before the trial. Dr. Thieme testified that plaintiff's left lower leg showed a moderate degree of atrophy of the quadriceps muscle of the left thigh; that injury to the nerve that supplies that muscle could cause such atrophy; that there was some thickening of the fat pads at the lower part of the left knee; that the left knee was restricted to about three degrees of normal in straightening out; that an attempt to forcibly straighten completely caused plaintiff to complain of pain; that flexion of the left knee was restricted to about 10 or 15 degrees of normal; that there was an increased crepitus on both bending and straightening of the left knee; that the [547] calf of the left leg was slightly smaller than the calf of the right; that there was some weakness in bringing the left foot up in dorsiflexion. "She could bring the left ankle up to 90 degrees, that is right angle; however, on the opposite ankle used in comparison she was able to bring it up 10 degrees past the right angle."

Dr. Thieme further testified that there was some weakness in bringing up the toes of the left foot; that this weakness appeared to be in the proximal joint; that plaintiff complained of local tenderness over the 4th and 5th lumbar vertebrae; also the lumbosacral; the left sacroiliac joint, and the greater sciatic notch on the left side; that plaintiff had a mild degree of spasticity—spasm of the lower back muscles; that there was considerable restriction in the backward bending of her back; that "in standing when she would jar on her heels she would complain of some pain in the back and also some pain down the left leg", but that in "bringing the arm above the head so she is in a stretching position" did not cause her to complain of pain; that acute neck flexion did not cause her to complain of pain. Other tests made with plaintiff lying on a table showed some lack of nor-

mality of the left leg as compared to the right. "In my opinion this condition causes her to complain of pain in the low back and the radiation of pain and from my objective findings on neurological examination and also my physical findings of her back I think that she had sustained a bruise of her left knee with some hemorrhage into the left knee joint which had resulted in a chronic synovitis, that is, a chronic thickening and roughening or chronic inflammatory condition of the lining of the left knee synovial membrane." Dr. Thieme gave it as his opinion that plaintiff's injuries are permanent unless relieved by an operation, and to the effect that such operation would be doubtful of success.

The question of excessive damages is generally difficult. There is no definite rule by which such question can be determined. Each case must rest upon its own facts; consideration should be given to the purchasing power of the dollar, and regard given to the rule of uniformity of verdicts. Joice v. M.-K.-T. R. Co., 354 Mo. 439, 189 S. W. (2d) 568, l. c. 577; Young v. Terminal R. Assn. (Mo. Sup.), 192 S. W. (2d) 402, l. c. 406; O'Brien v. Rindskopf et al., 334 Mo. 1233, 70 S. W. (2d) 1085, l. c. 1093. In support of the assignment on excessive verdict defendant cites: Weisman v. Arrow Trucking Co. (Mo. App.), 176 S. W. (2d) 37; Johnston v. City of St. Louis (Mo. App.), 138 S. W. (2d) 666; Kramer v. Laspe (Mo. App.), 94 S. W. (2d) 1090; Van Campen v. St. Louis-San Francisco R. Co., 358 Mo. 655, 216 S. W. (2d) 443 (not yet reported).

In the Weisman case (1943) the plaintiff was injured in a truck collision. An X-ray showed fracture of the second, third, and fourth right transverse processes. Such type of injury disabled, so far as concerned heavy work, for 4 or 5 months. He also sustained lacerations of the feet and arms; severe cut on the head; had an expense of about $1,000.00, and small property damage. The plaintiff's injuries were for a time severe and painful, but were not permanent. A verdict of $7,500.00 was held to be excessive by $1,500.00.

In the Johnston case (1940) the plaintiff, 55 years old, fell on a sidewalk; sustained a comminuted intertrochanteric fracture of the right femur which at times during a number of months caused him to suffer severe pain. He remained in the hospital about 2½ months, and was thereafter confined to his bed for 6 weeks, and then had to use 2 crutches for about 4 months; then one crutch and a cane for about 3 months. His ability to work was somewhat impaired. A verdict of $6,000.00 was held excessive by $1,000.00, citing Osby v. Tarlton, 336 Mo. 1240, 85 S. W. (2d) 27; Ruppel v. Clayes, 230 Mo. App. 699, 72 S. W. (2d) 833.

Plaintiff's injuries have slowed her up to some extent, but her ability to turn out work has not been greatly impaired. Such seems clear from the evidence. Economic conditions not overlooked, but considered along with the rule of uniformity, we think the present ver-

dict excessive by $2,500.00. If plaintiff will, within 15 days from the filing of this opinion, file here a remittitur of $2,500.00, the judgment will be affirmed for [548] $7,500.00. Otherwise the judgment will be reversed and the cause remanded. It is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.