Robert J. KEELY and Consolidated Electric Lamp Company, Appellants,

v.

ARKANSAS MOTOR FREIGHT LINES, Inc., and Roy Richardson, Respondents.

No. 44594.

Supreme Court of Missouri.

Division No. 1.

April 11, 1955.

Rehearing Denied May 9, 1955.

al injuries and the Electric Company asked $800 for the damages to the car. Arkansas Motor Freight Lines, Inc., and Richardson were named as defendants. A jury trial resulted in a verdict in Keely's favor for $7,500 and in favor of Consolidated Electric Lamp Company for $686. The trial court granted defendants a new trial because instruction No. 5, given at plaintiffs' request, was deemed to be erroneous. Instruction 5 advised the jury in substance that if plaintiff Keely was placed in a position of peril due to the negligence of the defendants, then the fact that he may not have taken steps to avoid a collision, which steps were likely to have endangered his life and limb, constituted no defense to his cause of action. Plaintiffs were granted an appeal from the order granting a new trial to the St. Louis Court of Appeals. That court transferred the case here on the theory that more than $7,500 was involved. The transfer was proper.

The evidence justifies the following statement as to what occurred at the time and place of the collision in question: The collision occurred at about 6:00 p. m., on March 2, 1951, about 2½ miles west of St. James, Missouri, on U. S. Highway 66. The topography of the ground in that locality is rolling. There is a dip in the highway, deep enough so that trucks and cars therein cannot be seen by drivers of vehicles from either direction until they reach the east or west crests of the hills enclosing the dip. These crests are about 1,500 feet apart. Keely testified that he was driving east on this highway at a speed of about 60 miles per hour; that when he reached the crest of the hill west of the dip, he saw two tractor-trailer combinations coming toward him abreast of each other; that the defendants' tractor-trailer, driven by defendant Richardson, was in the act of passing the other. Keely stated that the tractor-trailers were first seen by him when they were passing through the dip or immediately west thereof; that he used his brakes to slow down his car and then pressed down on the brake pedal to stop; that this caused his car to weave back and forth from right to left within his lane of the highway; that as he

Curtis J. Quimby, Jefferson City, Charles E. Gray, St. Louis, for appellants.

John J. Cole, St. Louis, for respondents.

WESTHUES, Judge.

Plaintiff Robert J. Keely was injured when a car he was driving collided with a tractor-trailer combination driven by defendant Roy Richardson. The car driven by Keely was owned by his employer, Consolidated Electric Lamp Company. The tractor-trailer was owned by defendant Arkansas Motor Freight Lines, Inc., employer of defendant Roy Richardson.

Keely, in the present suit, asked $7,500 damages as compensation for person-

met and passed defendants' tractor which had been turned to its right side of the highway, the rear portion of his car swung or "weaved" to the left and came into contact with the rear portion of the trailer in the south lane which was his (Keely's) side of the roadway. Debris found on the highway was three feet south of the center of the road. A highway patrolman, who arrived on the scene shortly after the event, testified that he found the debris and that Keely's car was in the south ditch about twenty-five feet east of the debris. The highway patrolman further testified that Keely's car came to rest about 300 feet east of the west crest which would not be more than halfway down the incline and west of the center of the dip. Richardson testified that he was driving at about 40 miles per hour and the other tractor-trailer was moving about 20 miles per hour and was probably building up speed going down the hill and through the dip to climb the hill to the west. According to Richardson, as soon as he reached the eastern crest, he looked and saw no cars on the south side of the highway coming east and he then began passing the tractor-trailer ahead of him; that he passed this outfit and was on his side of the road when plaintiff-Keely's car came into contact with the rear of his trailer. Richardson testified that he noticed the car driven by Keely weave; in a deposition he stated, "and this car came over the hill and when he topped the hill, why it started zigzagging, no doubt he hit the brake then and first cut into the center of the road then back to the shoulder, then back into the trailer, the rear end of my trailer." The damage to Keely's car was to the left rear portion; the front part of the car did not come into contact with the trailer. Richardson admitted that the roadway was marked by a yellow "No Passing" line and that he used a portion of the roadway so marked in passing the other tractor-trailer. He also admitted that he entered a plea of guilty to reckless driving. A certified copy of the judgment entered on the plea was introduced in evidence. It was in evidence that the shoulder of the south side of the pavement was about five feet in width. Plaintiff Keely testified the shoulder was wet and muddy. Richardson said the shoulder was not too muddy to park cars thereon.

The trial court at defendants' request gave an instruction (No. 2) advising the jury that it was Keely's duty to exercise the highest degree of care and "Therefore, if you find plaintiff Robert Keely knew or should have known by seeing the two trucks mentioned in evidence approaching alongside each other that there was reasonable danger of collision, and thereafter if you find he could have avoided such collision by sufficiently slackening the speed of his said automobile or by turning or swerving it to his right, but that he failed and omitted to do either of those acts, if you so find, and that in so failing plaintiff Robert Keely did not exercise the highest degree of care, if you so find, then you are instructed that Robert Keely was negligent, * * *." The instruction directed a verdict for the defendants if the jury should find Keely negligent.

The court gave at plaintiffs' request instruction No. 5 which the court deemed erroneous after a motion for new trial was filed. This instruction reads as follows: "In respect to Instruction No. 2, you are further instructed that under the law if you find and believe from the evidence and under the other instructions of the Court that plaintiff Robert J. Keely was placed in a position of peril due to the negligence of the defendants, then you are instructed that the fact that he may not have taken steps to avoid the collision with defendants' (defendants) which were likely to have endangered his life and limb constitutes no defense to this action. You are therefore instructed that if you find and believe from the evidence that plaintiff Robert J. Keely exercised the care of a very careful and prudent person under the same or similar circumstances with which he was confronted and in so doing did not swerve his automobile to the right in the fear of endangering his own life and limb, then you are instructed that you cannot find plaintiff Robert J. Keely negligent for failing to so swerve."

■ We do not find this instruction susceptible of the attack leveled against it. It plainly informed the jury that they could find Keely not negligent if he was placed in a position of peril by the negligence of the defendants and being in such position he did not swerve to the right in the fear of endangering his own life, if in so failing Keely exercised the care of a very careful and prudent person under the same or similar circumstances.

■ In this connection, it is argued in the brief that Keely was negligent as a matter of law because the evidence showed that the shoulder of the road was five feet wide and covered with gravel. The evidence also disclosed that beyond the shoulder there was a ditch and that Keely was driving downgrade. That Keely attempted to reduce the speed of his car was shown beyond doubt. Defendant Richardson testified that Keely's car was weaving from side to side probably due to Keely's actions —"no doubt he hit the brake." What did the drivers of the tractor-trailers do after Keely's car came within their view? Richardson testified the driver of the tractor-trailer he wanted to pass was building up speed to climb the hill, so the inescapable conclusion is that Richardson was building up speed to pass which he said he did before the vehicles came into collision. In such circumstances, a jury was justified in concluding that it was dangerous for Keely to have taken to the shoulder although Richardson stated the shoulder "wasn't too muddy to pull on there." This court's ruling in Moore v. Middlewest Freightways, Inc., Mo., 266 S.W.2d 578, loc. cit. 583(6), is applicable to the facts before us. Note what was there said: "Once the jury determined when and where plaintiff, in the exercise of the highest degree of care, could no longer assume defendant's truck would right its course, the further question was presented: Could and should plaintiff, in the exercise of the highest degree of care for his own safety, have done anything he failed to do to avoid the collision? It must be remembered that defendant created the dilemma with which plaintiff was confronted. Surely, in such a predicament, plaintiff would not be required to do that which then and there reasonably appeared to him to endanger him as much or more than did the impending collision."

■■ Defendants argue that Keely was negligent because after he saw the trucks, he did not immediately bear down on the brakes to stop the car. Keely testified that when he saw the trucks coming toward him abreast of each other, he "feathered" the brakes and reduced the speed of his car and then applied them "hard" but was unable to stop before the collision. The jury may well have found that Keely had the right to assume that Richardson, on discovering the Keely car, would slow down and take his side of the road behind the tractor-trailer he wanted to pass. The jury may also have found that Keely had the right to assume that Richardson would not attempt to pass the other tractor-trailer on an upgrade and in a "No Passing" zone. See Moore v. Middlewest Freightways, Inc., supra, 266 S.W.2d loc. cit. 582, 583(4) (5) (7); McGuire v. Steel Transportation Co.. 359 Mo. 1179, 225 S.W.2d 699, loc. cit. 701, 702(1–7). We rule that Keely was not negligent as a matter of law and that instruction No. 5 was proper under the facts in evidence.

The trial court overruled all other assignments of error contained in the motion for new trial. However, defendants have briefed a number of points in support of the trial court's order sustaining the motion. One of these was that Keely was guilty of contributory negligence as a matter of law. We disposed of that question before and it need not be further considered.

■ In another assignment briefed, defendants contend that the trial court erred in giving instruction No. 4 submitting the doctrine of sudden emergency. Defendants say this instruction was incorrect because it failed to hypothesize the necessary facts from which the jury could determine whether an emergency existed or that plaintiff Keely's conduct did not cause the emergency and further that the instruction did not hypothesize the conduct of Keely after the emergency arose so the jury could de-

termine whether his conduct was reasonable. The first two criticisms of defendants of this instruction may be disposed of by quoting a portion of the instruction. It reads: "In this connection, you are instructed that if you find and believe from the evidence that plaintiff Robert J. Keely in operating his automobile eastwardly along United States Highway No. 66, and as he came over the top of the hill, his lane of traffic was occupied by the defendants' truck, and that due to this fact, plaintiff Robert J. Keely was confronted with an emergency; and if you further find and believe from the evidence that plaintiff Robert J. Keely was not guilty of any negligence which caused or contributed to cause said emergency, then you are instructed that in determining whether plaintiff Robert J. Keely exercised the highest degree of care in the operation of his automobile, his conduct should be measured by what reasonably might be expected of a very careful and prudent person under the same or similar circumstances."

It is apparent that the facts necessary to create an emergency were hypothesized and that the jury were required to pass on the question of whether the emergency was created or contributed to by any negligence of Keely. As to the above-noted point, it will be seen that defendants in their requested instruction No. 2, submitting contributory negligence, hypothesized conduct of Keely after he was confronted with the emergency. The court by that instruction informed the jury that Keely was required to exercise the highest degree of care. Instruction No. 4, questioned by defendants, advised the jury in what manner the care required of Keely in the circumstances should be measured. The instruction was entirely proper. We find nothing in Shaw v. Fulkerson, 339 Mo. 310, 96 S.W.2d 495; Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541, and other cases cited by defendants contrary to our ruling. The instructions given by the court in this case were in harmony with the ruling in Boatright v. Bruening, 363 Mo. 494, 251 S.W.2d 709, and Nelson v. Tayon, Mo., 265 S.W.2d 409, loc. cit. 414(1–3). The instructions were a proper guide for the jury to determine the fact issues in the case.

■ Defendants in their brief say the trial court erred in admitting in evidence Exhibit F which was a certified transcript of the proceedings in the Magistrate Court relating to the plea of guilty by defendant Richardson. The only objection to this exhibit was "Note our objection to the offer."; and later a specific objection was made on the ground that Richardson did not have an opportunity to enter a plea of nolo contendere to the charge in the Magistrate Court. The record does not show that Richardson offered to enter such a plea. Defendants in their objection called the trial court's attention to the case of Neibling v. Terry, 352 Mo. 396, 177 S.W.2d 502, 152 A.L.R. 249. In that case, a disbarment proceeding, this court held that a plea of nolo contendere is not recognized in the Missouri Criminal Code. The case does not aid the defendants' contention and obviously there is no merit to this assignment of error.

■ Defendants offered and the trial court refused to give instruction A advising the jury that Richardson's plea of guilty in the Magistrate Court was not conclusive evidence of his negligence but only additional evidence for the consideration of the jury along with the other evidence. Defendants say that the court abused its discretion in refusing to give this instruction. Defendants cite Scott v. Missouri Ins. Co., Mo., 233 S.W.2d 660, loc. cit. 665(9). This court there quoted with approval from the case of State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S.W. 2d 58, loc. cit. 61, 124 A.L.R. 1331, stating the rule that where evidence is admissible for one purpose but improper for another, it should be admitted. The opponent would then be entitled to an instruction limiting the extent to which the jury could consider such evidence. We do not have such a situation before us and instruction A did not purport to limit the evidence to any particular issue. It was merely an instruction telling the jury that the plea of guilty was not conclusive on the question of negligence.

The action of the court was not an abuse of discretion.

In the last point briefed by defendants, they state that the trial court should have granted a new trial because the verdict of $7,500 in favor of plaintiff Keely was so excessive as to show that the jury was biased and prejudiced against the defendants. To this we cannot agree. The trial court in a memorandum filed with the order granting a new trial expressly overruled all other assignments of error. Note what the court said: "While it is not necessary to comment on other matters set forth in the defendants' motion for new trial, yet the Court considers it proper to make clear that there is no other ground in the motion on which same would be sustained."

■ On reading the record, we failed to note any occurrence which would have a tendency to prejudice the jury against the defendants. The amount of the verdict alone does not generally in and of itself show prejudice. O'Brien v. Louisville & Nashville R. Co., 360 Mo. 229, 227 S.W.2d 690, loc. cit. 693, 694(6), and cases there cited. In this connection, defendants also ask that the verdict be reduced by remittitur. In considering this question, we must have due regard for the purchasing power of the dollar. Jensen v. Kansas City, 361 Mo. 967, 238 S.W.2d 305, loc. cit. 309(6). We must also observe the rule that a jury verdict as to the amount of damages should not be disturbed unless it is grossly excessive or inadequate. Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S.W.2d 674, loc. cit. 681, 682(14–17); Mooney v. Terminal R. Ass'n of St. Louis, 353 Mo. 1080, 186 S.W.2d 450, loc. cit. 455(10–12).

Keely did not sustain injuries which would ordinarily be called serious. The injuries consisted of cuts on his left knee and forehead which were taped and treated by a doctor. Keely's knee continued to cause trouble; it became stiff and painful. An examination disclosed injury to the left kneecap or patella. One doctor stated plaintiff was suffering from bursitis of this patella; that the lining of the bursa of the patella was inflamed and caused pain. In this doctor's opinion, the condition was permanent. At the time of the trial, more than two years after the collision in question, plaintiff's condition had not improved. Keely's duties required a great deal of driving. He testified that due to the collision in question, he became nervous when driving; that often "my stomach tightens up and I have a time relaxing for a while." Keely stated his knee became painful when he walked or sat and that the pain continued to the time of trial. Keely described his condition as follows:

"A. It bothers me in this way, sitting here right now I got a pain in it, a sharp pain, doing nothing but sitting; if I drive for any length of time in the car, maybe at the end of the trip I got a pain in it. Weather conditions seem to effect (affect) it, sometimes it is longer, sometimes it is shorter, it comes and goes. I have had it for as long as four days in a row and as short as ten or fifteen minutes, I suppose.

"Q. What type of pains are they? A. Well, it is the bone, the whole area of the top of the kneecap just pains, aching pains."

Keely testified that before the collision in question, he was not troubled with his knee and was not nervous when driving a car; that he experienced no pain.

■ Pain and suffering are elements of damages which are difficult to measure in dollars and cents. See Noce v. St. Louis-San Francisco Ry. Co., 337 Mo. 689, 85 S.W.2d 637, loc. cit. 643(9, 10); Mooney v. Terminal R. Ass'n of St. Louis, supra, 186 S.W.2d loc. cit. 456(13); Talbert v. Chicago, R. I. & P. Ry. Co., 321 Mo. 1080, 15 S.W.2d 762, loc. cit. 766(8); Burr v. Kansas City Public Service Co., Mo., 276 S.W.2d 120. While we deem the amount of the verdict liberal, we do not feel that we are justified in saying that it is excessive to a degree as to justify a remittitur. See McGarvey v. City of St. Louis, 358 Mo. 940, 218 S.W.2d 542.

It follows that the trial court was not justified in granting a new trial. The case

is, therefore, reversed and remanded to the trial court with directions to set aside the order granting a new trial, to reinstate the verdict of the jury, and to enter judgment in plaintiffs' favor in the amounts stated in the verdict as of the date the verdict was rendered.

It is so ordered.

DALTON, P. J., and HOLLINGS-WORTH, J., concur.

HYDE, J., concurs in separate opinion.

HYDE, Judge (concurring).

I concur in the opinion of WESTHUES, J., herein because I do not think that Instruction 5 is legally erroneous. However, if a new trial had been granted on the ground that the instruction was misleading, I would affirm the order because it seems to me that it could be susceptible of the construction that the standard was the plaintiff's personal fear rather than the standard of a very careful and prudent person.