Carolyn PULEM, a Minor, by Her Mother and Next Friend, Rachel Blankenship, Respondent,

v.

Charles R. GEORGE, a Minor, by His Mother and Guardian Ad Litem, Catherine L. George, Appellant.

No. 24727.

Kansas City Court of Appeals. Missouri.

Oct. 7, 1968.

Forest W. Hanna, Kansas City, Sprinkle, Carter, Sprinkle, Larson & Hanna, Kansas City, of counsel, for appellant.

John R. Moore, Platte City, for respondent.

HOWARD, Presiding Judge.

This suit for personal injuries growing out of a one-car accident resulted in verdict and judgment for the respondent in the amount of $7,500.00. Appellant has duly appealed to this court. We shall refer to the parties as they appeared below.

The plaintiff was the girl friend of the defendant. When high school let out October 6, 1964, the defendant picked up the plaintiff and two other girls in his automobile. Plaintiff was sitting in the right front seat, defendant was driving, and the two other girls were in the back seat. They were going toward downtown Platte City when one of the girls in the back seat said something to defendant and he turned to look toward the back seat. One of the girls said "Look Out" and he turned back around just as the car ran off the road and hit a culvert. The plaintiff was thrown forward in the car. She was not knocked unconscious but remembered only parts of who happened thereafter. She received a cut below her lower lip and above her chin which required eight sutures to close. This was a through and through cut. She also received a cut under her chin which required three sutures to close and a cut on her nose which required two sutures to close. She received a broken nose, a fracture of the right cheek bone, a blow to the back of her head on the right side and a blow to the mouth. Her four upper front teeth were damaged. One-third of one tooth was broken off and another tooth was cracked. She received a soft tissue injury to her right foot which became badly swollen. She was taken to the hospital where she was treated and remained for ten days. After spending four more days at home, she returned to school on October 20. She used a wheelchair to get from class to class for fourteen days, and remained on crutches until November 6, 1964, when she began to put weight on her foot and by the end of December, she was able to return to fairly full activities around the home. She did not return to gym or band until March 1, 1965. As a result of the accident, she has a bump on her nose, a scar below her lower lip, a scar under her chin, and the injured foot is one-half size larger than the other foot. She has occasional cramping in the foot but no other pain and the four front teeth which were damaged are sensitive to cold and the dentist testified that they should either be extracted or that she should receive root canal treatment for them. There is a cap over the broken tooth. She last saw her doctor on October 18, 1965, at which time he considered her recovered. He estimated her period of total disability as the ten days, from October 6 to October 16, 1964, and that her period of partial disability terminated on January 18, 1965.

Shortly after the trial of this case and before the transcript was prepared, the re-

porter died unexpectedly. Efforts by the attorney for the appellant and by the court to secure someone else to transcribe the reporter's notes were unsuccessful. Therefore, appellant filed a motion in this court for a remand for new trial because of the inability to secure a transcript of the proceedings. This motion was denied and the parties have prepared a narrative statement of the case which has been approved by the attorneys for both parties and by the trial judge.

The first point of defendant's brief in this court urges that we reverse the judgment and remand for a new trial because of his inability to secure a full and complete transcript. He states that the narrative statement prepared by the parties "is an unsatisfactory solution to the problem under all of the circumstances and its result(s) are grossly prejudicial to the appellant." However, he does not point out how he has been prejudiced by this situation or wherein the agreed statement is inaccurate or what, if anything material to his cause, has not been included in the agreed statement. Furthermore, we have examined the motion for new trial which consists of 14 numbered paragraphs. Only 4 of these paragraphs preserve anything for appellate review. The other 10 paragraphs are of such a general nature that they do not preserve anything for our consideration either with or without a transcript. The points preserved are that the trial court committed error (1) because the verdict was excessive and indicates passion, prejudice and misconduct on the part of the jury; (2) because the verdict was excessive; (3) because the trial court refused to direct a verdict for defendant; and (4) because there is a failure of proof of the causal connections between the accident and plaintiff's injuries.

As to the directed verdict, both the plaintiff and the defendant agreed on how the accident happened as we have recited above, and nothing further need be said to demonstrate that under such circumstances the defendant was not entitled to a directed verdict. Defendant has briefed the question of the excessiveness of the verdict and also his claim that such excessiveness was a result of passion and prejudice on the part of the jury. In this connection he has also argued the claimed failure to prove that plaintiff's injuries were caused by the accident. His brief does not point out how his submission of these questions has in any way been affected by his inability to secure a full and complete transcript.

In State v. McCarver, 113 Mo. 602, 20 S.W. 1058, the Missouri Supreme Court had before it a case wherein a defendant had received a sentence of 25 years in the penitentiary. During a delay caused by the refusal of the clerk to perform his duties, the transcript of the evidence was lost and the reporter's notes were lost. The court stated that "In any ordinary case, we should have great hesitancy in reversing * * *" because of the absence of a transcript. The court then went on to point out that the appellant was without fault and concluded that "* * * in order that right and justice may be done, and a grievous wrong, perhaps, averted * * *." the judgment below would be reversed and the cause remanded for a new trial. In the later case of State v. Thompson, 130 Mo. 438, 32 S.W. 975, the Supreme Court held that the appellant had not shown due diligence in securing the transcript before the reporter died or in otherwise preserving the evidence and therefore refused to grant relief because of the absence of a transcript. In several cases following these two Supreme Court decisions, the three courts of appeal have reversed and remanded because of the inability to secure a transcript where the appellant exercised due diligence and was entirely without fault or blame and where the complaints on appeal could not be passed upon in the absence of a transcript. Such relief has been denied where the appellant did not exercise due diligence or was otherwise at fault. See Woods v. Bottmos, Mo. App., 206 S.W. 410; Stevens v. Chapin, 206 Mo.App. 594, 227 S.W. 874; Larson v. Shockley, Mo.App., 231 S.W. 1030; Scharff

v. Holschbach, 220 Mo.App. 1139, 296 S.W. 469; and Green v. Kansas City, Mo.App., 77 S.W.2d 652.

In the more recent case of Longmire v. Diagraph-Bradley Stencil Machine Corp., 237 Mo.App. 553, 173 S.W.2d 641, the St. Louis Court of Appeals held that there was no authority to reverse and remand the cause because of the inability to secure a transcript. It held that State v. McCarver, supra, presented a unique situation and that the decision of the Supreme Court in that case did not authorize the granting of such relief in civil cases.

■ In the case at bar, while the defendant has shown due diligence and is without fault, he has not shown that he is injured in any way by his inability to secure a full and complete transcript of the record. He has not been prevented from presenting his contentions to this court as fully as he would have been if a full transcript were available because no questions of the admission of evidence or other trial incidents were preserved for review by the motion for new trial. We therefore decline to reverse this cause for this reason.

■ By the other point in his brief, defendant raises the two contentions that the verdict is excessive and that the verdict is excessive because of passion, prejudice and misconduct on the part of the jury. As to the question of passion, prejudice and misconduct on the part of the jury resulting in an excessive verdict, this contention can only be based upon the amount of the verdict alone. Defendant does not point to anything else upon which this court could base a finding of passion, prejudice and misconduct on the part of the jury. While the trial court may find excessiveness resulting from passion, prejudice and misconduct, from the amount of the verdict alone, an appellate court will not do so. See Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157; Mitchell v. Pla-Mor, Inc., Mo., 237 S.W.2d 189; Skadal v. Brown, Mo., 351 S.W.2d 684; Hartz v.

Heimos, Mo., 352 S.W.2d 596; and Stubbs v. Kansas City Terminal Railway Company, Mo.App., 427 S.W.2d 257.

■ This leaves us with the question of simple excessiveness. As to this issue the defendant states: "The question of inadequacy or excessiveness of the award of the jury is not a question susceptible of determination by precise formula or with mathematical nicety and each case must be ruled on its own particular facts." He further says: "The ultimate test of excessiveness or inadequacies of the jury award is what will fairly and reasonably compensate a plaintiff for her injuries." Defendant cites Pitt v. Kansas City Public Service Co., Mo., 272 S.W.2d 193, and Donahoo v. Illinois Terminal Railroad Co., Mo., 300 S.W.2d 461, for these statements. We agree with these general rules. See also Brooks v. Mock, Mo., 330 S.W.2d 759. It is the jury's duty to make a fair appraisal of the amount to be awarded as compensation to the plaintiff for her injuries. Rodenberg v. Nickels, Mo.App., 357 S.W.2d 551. Unless the verdict is grossly excessive, the appellate court should not disturb it when it has received the approval of the trial court. Price v. Nicholson, Mo., 340 S.W.2d 1, and Keely v. Arkansas Motor Freight Lines, Mo., 278 S.W.2d 765.

In Burr v. Kansas City Public Service Co., 365 Mo. 115, 276 S.W.2d 120, the Supreme Court pointed out some of the considerations that should govern our determination of this issue. It said, l. c. 127:

"There is no precise method for determining the maximum award which the evidence in this case will support. Each case must be considered upon its own peculiar facts. Due regard should be given to the purchasing power of the dollar, to the rule of reasonable uniformity of awards for similar injuries and to the fact that the jury and the trial judge were in a better position than this court to measure an award of reasonable compensation, as well as to the fact that the

trial court has approved the verdict in question."

See also Settell v. Horgan, Mo.App., 362 S.W.2d 769. Such matters as pain and suffering are difficult to measure and in the case at bar, the jury was able to observe the scars on the face of the plaintiff who was a high school girl at the time of her injury, as well as the bump on her nose and the appearance of the injured teeth. This cannot be reflected in the record. See Price v. Nicholson, Mo., 340 S.W.2d 1.

■ Defendant contends that there was no evidence of permanent injury; however, it appears that her foot would probably remain swollen although she had no pain therefrom. The bump on the nose and the scars on her chin are obviously permanent in nature, the broken and cracked teeth are unquestionably permanent and the dentist recommended removal or root canal treatment for the injured teeth. All of these are in the nature of permanent injuries. As to the scar tissue, defendant cites the case of Driver v. Anheuser, Mo.App., 397 S.W.2d 11, to the effect that scar tissue does not constitute permanent injury where there was no medical evidence that the scars would cause any physical impairment. In the Driver case, the plaintiff had suffered severe strain or sprain to muscles in his neck. The doctor testified that this resulted in the formation of scar tissue in the muscles inside the body. He further stated that the plaintiff would have full recovery of the function of the neck. Among other things, the court in that case pointed out that the scar tissue was not disfiguring. This case has absolutely no bearing upon our consideration of scars upon the face of a young girl.

■ Defendant also maintains there is no evidence that the plaintiff's injuries in the case at bar resulted from the accident. This can certainly be inferred from the evidence in the record. See Hay v. Ham, Mo.App., 364 S.W.2d 118. The case relied upon by defendant, Moore v. Glasgow, Mo. App., 366 S.W.2d 475, involved isolated instances of back pain occurring one and two years after the accident. Both the plaintiff and his medical witnesses testified that they did not know what caused these isolated occurrences. The decision in this case has no applicability to the case at bar.

■ We have compared the evidence of injury in the case at bar with the injuries in the cases cited by both plaintiff and defendant. As is usual, no really comparable cases have been found. However, here we have a broken nose and a broken cheek bone, severe soft tissue injury to the foot, blows to the mouth and back of the head, damage to the front teeth and scars on the face of this young girl and when we consider that she was hospitalized for ten days, remained at home an additional four days, used a wheel chair for fourteen days and crutches thereafter, and that she was not able to put her weight on the injured foot until a month after the accident, and that she did not return to fairly full activities around the home until three months after the accident and did not return to her participation in gym and high school band until five months after the accident, we cannot say her injuries were minor although she did have a good recovery prior to trial. She, of necessity, was subjected to pain and suffering which, as we have pointed out, cannot be nicely measured, she has some disfigurement from the scars which the jury could observe and which we cannot evaluate, and she had a permanently swollen foot and permanent damage to her teeth. In view of the rapidly decreasing purchasing power of the dollar and having considered the cases cited, together with other cases discovered through our own research, we have concluded, as was said in Keely v. Arkansas Motor Freight Lines, Mo., 278 S.W.2d 765, 771, that while the amount of the verdict is liberal, we do not feel that it is so excessive as to justify our requiring a remittitur. Our conclusion on this point is buttressed by the fact that this verdict was approved by the trial court when it ruled on the motion for new trial.

Judgment is affirmed. All concur.