558

Margaret Canavan, Appellee, v. T. J. Canavan and G. L. Tarlton, Appellants.

Opinion filed September 18, 1933.

POPE & DRIEMEYER, for appellants.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

Appellee, Margaret Canavan, recovered judgment in the city court of East St. Louis, Illinois, in the sum of $6,000 against her father-in-law, T. J. Canavan, and G. L. Tarlton, partners in the real estate business. The judgment was for personal injuries resulting from the alleged negligence of her husband, Cletus Canavan, in the operation of an automobile in which they, with others, were riding. The declaration consisted of one count. Said count alleges that appellee on the 22nd day of March, 1931, while in the exercise of due care for her own safety, was riding as a guest in a certain automobile, which was owned by, and in the possession of, and being driven by one of the agents, servants, or employees of, the appellants and that said appellants, by their agent or servant who was operating said automobile, so carelessly, negligently, and improperly, drove and managed the same as to cause it to collide with another automobile, whereby appellee sustained injuries. Appellants pleaded the general issue and filed special pleas denying that at the time of appellee's injuries they were possessed of, using or operating the automobile in appellee's declaration described, denying that the operator of the automobile was their agent, servant or employee, or that he was operating, driving or using the automobile as an agent, servant or employee of appellants, and denying that appellee was riding in the automobile as a guest of appellants.

Appellee and her husband, Cletus Canavan, resided in East St. Louis. On the evening of March 22, 1931, Mr. and Mrs. DeBow came to visit them. After they had been there an hour or so, appellee and her husband and Mr. and Mrs. DeBow left the Canavan residence and went to a road house in St. Louis county, Missouri, where they spent the evening. They had some liquor, a chicken dinner and danced until after midnight. They then left the road house to return to the Canavan home. Cletus Canavan was driving a Hud-

son sedan and DeBow was sitting in the front seat at his right. Appellee and Mrs. DeBow were sitting in the rear seat. While crossing the free bridge from St. Louis to East St. Louis, the car in which they were riding collided with another car headed in the same direction at a double curve on the Illinois side of the free bridge. Appellee testified that when they got to the free bridge the car seemed to pick up speed, but that she hadn't any idea how fast it was going; that she thought that the car they collided with was standing still, but she couldn't say for sure; that when her husband saw what was going to happen, he applied the brakes and they grabbed. The bridge was slick and the rear end of the machine skidded around and collided with the other car. DeBow testified that Canavan was driving normally with the exception that he was driving fast for that time of night; that he would say he was driving in excess of 45 miles. It had begun to drizzle. DeBow further testified that after they got to the last turn on the east approach, there was a car in front of them; that he didn't know whether it was moving or not; that he called Canavan's attention to the car and he applied his brakes and turned to the left, causing the car to skid; that the right side of the Canavan's car from the rear door on back to the end of the car came in contact with the other car which was either set in motion or continued in motion and left the scene of the accident.

It appears that on April 6, 1931, this same DeBow made a written statement in which he said that Canavan was driving east over the free bridge about a moderate rate of speed; that Canavan was following an old car which did not have any license plate; that he was not sure about it having lights on it; that Mr. Canavan's lights were burning bright; that the car had stopped and Mr. Canavan swung to the left and applied his brakes; that he did not have to caution

Mr. Canavan about driving too fast or about being careful and neither did anyone else. His explanations of the discrepancies between his testimony on the trial and his version of the accident as contained in the aforesaid statement was that when he made the statement it was obtained in the presence of his wife and Mr. and Mrs. Canavan. He "moderated his statement"; that he did this to save Cletus from embarrassment.

This suit was started nearly two years after appellee was injured. At the time she received her injuries, there was apparently no suggestion made that Cletus Canavan was, at the time the accident occurred, engaged upon any business or mission for appellants. In the trial, it was contended that at the time the accident occurred, Cletus Canavan was engaged in business of appellants. It was after midnight when the collision occurred and appellee and her husband and their friends had been to the aforesaid party at a public road house. T. J. Canavan and G. L. Tarlton, appellants, were in the real estate business in East St. Louis and they employed Cletus as a salesman and collector. His duties were selling real estate, negotiating loans, leases and insurance. The firm of Canavan & Tarlton, which was composed of appellants, owned the Hudson automobile which Cletus was driving that night and which he was in the habit of using on the firm's business and for his personal pleasure. Cletus Canavan drew a salary from the firm composed of appellants and was allowed his expenses. His expenses were to help in negotiating sales, to entertain people,—among other things, to take them out. Cletus Canavan had been negotiating with DeBow prior to the collision for the sale of a certain lot. He had authority to sell said lot anywhere from $30 to $15 a foot and to arrange terms of sale without reporting back to appellants for a confirmation of his contract. Appellee and

her husband were at home on the Saturday evening on which appellee was injured when Mr. and Mrs. DeBow arrived. The DeBows lived in Granite City and had come to East St. Louis to have dinner with Mrs. DeBow's mother; they were friends of appellee and her husband. Appellee and Mrs. DeBow had been friends since they were little girls. Appellee and her husband had been in attendance when the DeBows were married. They visited each other and had been out on parties together on several occasions. When the DeBows arrived, appellee was putting her son to bed. Mrs. DeBow joined her while appellee's husband and DeBow remained in the living room. They had been together an hour when appellee's husband said to her, "I want to talk to Mr. DeBow about some business, we are going to Van Horn's, would you and Thelma like to ride over?" DeBow testified that he had gone, on the evening in question, to talk to Cletus Canavan about buying a lot; that Canavan asked him if he would care to go to Van Horn's in St. Louis and have dinner; that since they had nothing else planned for the evening, they went over with him. On the way they talked about the financial dealings concerning the property in question. They had, however, discussed the matter extensively at Canavan's home before they started. They were at the road house from 9:30 until after 12 o'clock. They ate and danced together there.

Appellants assign as error the action of the trial court in refusing to direct a verdict in their favor. They contend that appellee failed to prove that Cletus Canavan was negligent, or if he was, that he was engaged in any business for appellants when appellee's injuries occurred. They contend further that inasmuch as appellee's injuries occurred through the negligence only of her husband, and her husband not being legally responsible to her in damages therefor, appel-

lants, whose liability could be predicated only on the ground of *respondeat superior,* are not, under any circumstances, liable to her.

It is contended first that there is no evidence of negligence on the part of Cletus Canavan which warranted the trial court in submitting the case to the jury. With this position we cannot agree. The circumstances of the collision of the two cars as detailed by this evidence were circumstances which called for greater care and attention on the part of the driver. He was leaving the populous part of the City of St. Louis and entering the populous part of the City of East St. Louis. He was on a bridge, and rain was falling; according to the testimony he was driving at from 40 to 45 miles per hour immediately before the collision in question occurred. It would seem that such rate of speed does not indicate that the driver of the car, under such circumstances, is giving due consideration to the question of his safety and the safety of those riding with him, having regard to the traffic and use of the way. Furthermore, as a driver of an automobile with experience, as the evidence indicates Cletus Canavan was, he must have known that on a road such as the free bridge road, an automobile would skid if it became necessary to put on the brakes as was done in this case. He must have known, in the exercise of reasonable care in that behalf, that he might be called upon at any time to use his brakes to prevent just such a thing as did occur. We are of the opinion, were this case to be determined on the question of negligence or due care on the part of Cletus Canavan, the court would have been fully warranted in allowing the case to go to the jury.

There are, however, other important questions in this case if we assume for the sake of argument that Cletus Canavan was guilty of negligence as found by the jury.

The next and very important question is the question whether Cletus Canavan at the time and place of the injury in question was either agent or servant of appellants, then and there engaged in his duties as such agent or servant in respect to the particular transaction out of which the injuries arose. We have searched this record diligently for anything amounting to proof which indicates that Cletus Canavan was so engaged at the time of the injuries in question. Somewhere between the time that Cletus Canavan met the DeBows, on the evening in question, the two men talked something about the financial arrangement for the purchase of a lot. We must rely upon this and this alone to support such contention. On the other hand, there is much evidence and many circumstances which indicate that the parties, all of them on the night in question, were engaged purely in an excursion of pleasure. That seemed to be the predominant idea in the minds of all of them. There is no conceivable way by which this joy ride to the night club in Missouri could have been or was a part of any business transaction in which appellants were interested. We see no connection between the duties of Cletus Canavan as an employee of appellants and the joy ride which is described in the record in this case. The court on the motion for a directed verdict, of course, could not weigh the evidence. However, to our minds, the facts and circumstances in evidence upon which appellee relies to establish that this trip was made by Cletus Canavan on the business of appellants as an agent of appellants, do not amount to proof that the trip was so made. On the contrary, when considered in the light of the whole proof, these circumstances fall consistently into line with the affirmative proof that Cletus Canavan, appellee and the DeBows, were engaged solely on a pleasure event personal to them, with which Cletus Canavan's employment by appellants had no causal relation.

We are constrained to the opinion that the trial court was not warranted in submitting this case to the jury, there being no obligation which appellants owed to appellee except upon the theory of *respondeat superior*.

The trial court erred in not instructing the jury to find the appellants not guilty.

Having arrived at the foregoing conclusion, it is unnecessary for us to discuss here the other question raised by appellee, namely, that Cletus Canavan, not being under the law subject to be sued by his wife for injuries accruing to her because of his negligence, therefore, his superiors in this case, appellants, could not be sued.

Looking at this case in its most favorable light to appellee we are unable to say that appellants owed any duty to her under the circumstances.

The judgment of the city court is reversed.

*Judgment reversed.*