Edmund A. Jacks, Appellant, v. Clarence A. Woodruff, d/b/a C. A. Woodruff Co., Appellee.

Gen. No. 46,687.

First District, First Division.

March 5, 1956.

Rehearing denied March 21, 1956.

Released for publication March 21, 1956.

William C. Wines, and John A. McElligott, both of Chicago, for appellant.

Ross, Berchem, Schwantes & Thuma, of Chicago, for appellee.

JUDGE BURKE delivered the opinion of the court.

On Sunday, September 16, 1951, about 7:00 p. m., while Vern L. Woodruff was operating his automobile in a westerly direction on Dempster Street near Milwaukee Avenue in Cook County, the car ran over Edmund A. Jacks, a pedestrian, who suffered the loss of both legs and other injuries. A trial of the ensuing action resulted in a verdict and judgment for $25,000 against Vern Woodruff and Clarence Woodruff, who are brothers. Vern acquiesced in the verdict. Clarence

did not ask for a new trial. His motion for judgment notwithstanding the verdict was allowed. Bert Carlson, Charles G. Dencker and Carl R. Dencker were also named as defendants. A non-suit was entered as to Bert Carlson and the court directed a verdict in favor of the Denckers. Plaintiff appealing, asks that the judgment in favor of Clarence Woodruff be reversed and that the cause be remanded with directions to restore the judgment on the verdict.

The parties stipulate that the only issue is whether there is competent evidence to support the allegation that at the time of the occurrence Vern was the agent of Clarence. It is plaintiff's theory that the evidence on this question was sufficient under the controlling Illinois decisions. The theory of Clarence is that the trial judge correctly concluded that there was no evidence sufficient to support a finding that at the time and place of the occurrence his brother was acting for him.

Clarence, hereinafter called the defendant, lived at 945 Pitner Avenue in Evanston. His business is "sheet metal work, generally heating." His home is located on the front and his business establishment on the rear of the lot. Vern lived at 1937 Ashland Avenue in Des Plaines. Charles G. Dencker was building a house at 986 Prairie Avenue in Des Plaines. He did not retain a general contractor. In the spring of 1951 he entered into a contract with the defendant for the sheet metal and heating requirements. The sheet metal work included the manufacture and placing of the gutters and downspouts. Dencker entered into a separate contract with Carlson to pickle and paint the gutters and to paint the trim. There was evidence that Carlson employed Vern to help him. In late August 1951, the defendant engaged his brother and Carlson to paint defendant's residence and to assist in the remodeling of the shop in the rear. Vern had been engaged in the

building trades as a painter for 45 years. Carlson had also spent his lifetime in the painting and decorating trade. These men were not carried on the payroll of defendant as "regular" employees in his sheet metal and heating business. Defendant's records show that the work of these men for defendant commenced in late August 1951, and was completed early in November, 1951.

At the time the defendant had approximately 21 employees working for him. On Sunday, September 16, 1951, Vern worked for the defendant at the latter's premises in Evanston. His work was "mixing mortar and picking up brick, that is, putting brick in a bucket," which other employees of defendant were "pulling up." They worked until 5:15 in the evening. When Vern, accompanied by Carlson, left defendant's premises that evening Vern had his two extension ladders affixed to the top of his car. While Vern was driving his own car transporting the ladders on the way to his home in Des Plaines, the unfortunate mishap occurred. Plaintiff, relying on admissions by the defendant, maintains that there was evidence from which the jury had the right to find that in Vern's work for the defendant Vern and other employees used the ladders belonging to Vern and furnished by him; that Vern brought the ladders to the defendant's home and place of business on September 4, 1951, and left them there until September 16, 1951, the day of the occurrence; and that Vern was expected to transport these ladders from defendant's home and place of business on the evening of September 16, 1951, and to have them available at the Dencker house in Des Plaines the next morning for use by himself and other employees in the performance of defendant's contract with Dencker. Defendant states that while there is evidence that certain extension ladders owned by Vern were brought to defendant's premises early in September

and were used in connection with the painting and remodeling work there, the evidence is undisputed that Vern did not bring the ladders there or use them at the request or direction of defendant; that the ladders were there without defendant's knowledge or direction; that from the time Vern and Carlson left his premises in Evanston on Sunday evening, September 16, 1951, until the following Wednesday morning they performed no further services for the defendant; that neither of them received any pay for that period of time from defendant; that when Vern and Carlson left his premises on Sunday evening defendant did not know that the ladders were on Vern's car; and that defendant did not direct Vern to take the ladders any place.

An investigator named L. W. Sorenson, employed by plaintiff, testified that he interviewed Vern and Carlson and obtained statements from them. The statement of Vern, received in evidence, said that he and other employees of defendant used the ladders owned by Vern on the job being done at defendant's premises in Evanston; that he had brought them to work to use in his "regular employment" as a laborer for defendant on September 4, 1951, and left them there until "the day of this accident, when I was taking them home as I had a half day's work Monday, September 17, 1951, at the Dencker home being built at Des Plaines on Prairie Avenue where C. A. Woodruff had a heating job to put in, and we needed the ladders." The statement of Carlson said that Vern was taking the ladders home and was going to take them over to a house being built at 986 Prairie Avenue, where defendant was putting in air ducts, a heating plant "and already put up the gutters and downspouts. The following day after the accident I met Vern Woodruff at the Denckers job around 8:30 a. m., October [September] 17, 1951. He drove up with the ladders

228

still on the car and I used them during the day. He used them also in his work. I washed the gutters and downspouts in vinegar to cure the metal so they could be painted. Vern Woodruff worked around the house helping C. A. Woodruff Co.'s men, helped the carpenter at the garage. I did all the painting myself. Vern Woodruff was working for C. A. Woodruff Company helping one of C. A. Woodruff's men named Jack or Carl."

When defendant denied on cross-examination that these statements had been read to him by Errett O. Graham, then an attorney for plaintiff, the latter withdrew as an attorney in the case and testified to a telephone conversation with the defendant. He testified that in the first week of December 1951, defendant called him on the telephone stating that he had been served with a summons and that he was calling because the name of the witness was on the summons. The witness testified that defendant stated he did not know that his brother Vern had given a statement; that he did know that Vern had ladders on the car; that witness told defendant that he had the statements in front of him, read portions to him and asked if they were true; that witness read the part of the statement wherein Vern had said that he had used the ladders at the premises in Evanston; that they had been there several weeks; and that they had been used by all employees of defendant while there. Witness testified further that he asked the defendant if that was true and he said it was; that he asked defendant if the part of the statement wherein Vern said he was taking the ladders to another job the next morning, to the job he was doing for defendant where he was putting in ventilating, heating and sheet metal work for Dencker at Des Plaines, was true and he said it was. Witness stated that he asked defendant if he would tell him how that happened and that defendant said

229

that Vern was taking the ladders that evening because he didn't want to come back to Evanston the next day; that he lived in Des Plaines; and that the job was in Des Plaines where they were going to use them.

■ The parties recognize the well known rule that the motion for judgment notwithstanding the verdict presented to the court the question whether, admitting the evidence in favor of the plaintiff to be true, with all the reasonable inferences therefrom that may be drawn in his favor, there is any evidence fairly tending to prove the cause of action alleged. Plaintiff insists that the Illinois authorities hold that if an employee's duties require him to drive an automobile, the question whether the employee is or is not within the scope of employment is one for the jury, and that this is true even though the employee is driving his own car and even though he has finished his work for the day and is enroute to his home or some other place not connected with his employer's business. Defendant argues that since Vern's work for the day had ended and he was on his way to his own home in his own car, no liability can attach to defendant under the doctrine of respondeat superior.

Plaintiff cites Reilly v. Peterson Furniture Co., 314 Ill. App. 46; Nattens v. Grolier Society, Inc., 195 F.2d 449; and Flood v. Bitzer, 313 Ill. App. 359, to support his position. In the Reilly case Henke was driving his own automobile both in his business and as an employee and for his own pleasure. He was employed to go about the city making collections for his employer. The expenses of the operation of his automobile were included in his salary. He was authorized to make night calls in order to accomplish his collections. At the time of the mishap Henke had finished his work and was enroute to the home of his mother. The court in affirming a judgment for the plaintiff said (50):

"The question whether Henke at the time was in the course of his employment or was on a mission of his

230

own is not free from difficulty but we think it was a question for the jury to decide. . . . It is the law that where a difference of opinion might legitimately be drawn from the evidence on the question of negligence, the case must be submitted to the jury."

The Nattens case was tried in the United States District Court for this district, the ground for federal jurisdiction being diversity of citizenship. As the case arose in this state the federal court applied the substantive law of Illinois under the doctrine of Erie R. Co. v. Tompkins, 304 U. S. 64. The District Court set aside a verdict against the owner and the driver of the automobile and granted judgment notwithstanding the verdict as in the case at bar. In that case the employee had finished his work for the day and was enroute toward his home. He was carrying some sales literature he needed in connection with his work as a salesman. The Court of Appeals, holding that whether the salesman was acting as an independent agent of the defendant or was an independent contractor, was a question of fact for the jury, reversed the judgment and remanded the cause with directions to enter judgment on the verdict. In the Flood case Frerker was a salesman for the defendant. He was the owner of the automobile involved in the mishap. The defendants paid him a monthly salary, paid for the gas and oil and a certain amount each month for the depreciation on his car. At the time of the accident the car was being driven by the employee's fiancee. Frerker had made a delivery of parts for his employer and contemplated a visit to his parents and dropping off another delivery on his employer's behalf. A judgment for the plaintiff was affirmed.

■ Defendant, in support of the ruling of the trial judge, says that the probative evidence, with all reasonable inferences drawn therefrom favorable to the plaintiff, fails to support a finding that Vern was act-

■■■■■■

ing for him at the time and place of the occurrence. He says that not only were the alleged admissions by the defendant, contained in Graham's testimony, specifically denied by the defendant but that Graham's prior double denial in open court that he had any conversation with the defendant, plus the showing of the impossibility of the use of the ladders in and about any work to be done on behalf of the defendant at the Dencker residence, require the court to completely disregard Graham's testimony. Defendant states that he does not suggest that Graham's evidence be weighed but rather that it be rejected as improbable and unbelievable. Defendant testified that he had a conversation with Graham. He contradicts Graham's version of the conversation. Both of these witnesses were interested parties. Since there is no doubt that Vern made the statement signed by him and no doubt that the statement was discussed in the telephone conversation with Graham and the defendant, we cannot say that it was unreasonable for the jury to believe that the defendant confirmed the statement. There is competent evidence that Vern was employed by the defendant at the latter's home and place of business in Evanston and that in connection with the work there he transported his own ladders to that place; that on the evening of the occurrence Vern left in his own automobile transporting the ladders that he had been using in Evanston; that the defendant admitted this to be true; that Vern was to work for the defendant at the Des Plaines job the next morning; and that Vern intended to transport the ladders to Des Plaines so that they would be available if needed. We are of the opinion that under the factual situation there was competent evidence from which the jury could find that Vern was the agent of the defendant at the time of the occurrence.

■■ Without the admissions of the defendant, introduced by the testimony of Graham, the plaintiff

would not have a case against Clarence Woodruff. Admissions are ordinarily admissible as original or substantive evidence of the truth of the statements made or of the existence of facts which they tend to establish; while they may be used to impeach or contradict the testimony of the party who made them, their admissibility does not depend on, nor should their effect be confined to, their tendency to do so. 31 C. J. S. Evidence, Sec. 273. In Mauro v. Platt, 62 Ill. 450, the court in reversing a judgment because of a faulty instruction, said (452):

"It by no means is true that, under all circumstances, admissions are weak evidence. Sometimes they are the strongest and most satisfactory species of evidence. It is the peculiar province of the jury to weigh the evidence, and to give to it the consideration to which it is entitled. Where it is conflicting, it is not proper for the court to throw its weight against one of the parties by telling the jury his evidence is weak. By so doing, the province of the jury is invaded, and, if exception is taken, must reverse the judgment."

For the reasons stated the judgment of the Circuit Court of Cook County is reversed and the cause is remanded with directions to restore the judgment on the verdict against Clarence Woodruff.

Judgment reversed and cause remanded with directions.

FRIEND, P. J. and NIEMEYER, J., concur.