Roy J. MASSEY, Respondent,

v.

BERLO VENDING COMPANY, Appellant, John Scott, Defendant.

No. 47264.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

Alexander & Robertson, Louis A. Robertson, Ernest E. Baker, St. Louis, for appellant.

Cleo V. Barnhart and Barnhart & Sommers, St. Louis, for respondent.

HYDE, Presiding Judge.

Action for damages for plaintiff's personal injuries (Count I) and loss of his wife's services and her hospital and medical expenses (Count II) caused by a collision of plaintiff's automobile with an automobile driven by defendant John Scott. Plaintiff had verdict and judgment for $7,500 on Count I and $15,000 on Count II, a total judgment of $22,500, from which defendant Berlo Vending Company (hereinafter called Berlo) has appealed.

Berlo contends it was entitled to a directed verdict because it claims that plaintiff failed to prove that defendant John Scott was its employee acting within the scope of his employment at the time of the collision of his car with plaintiff's car. The collision occurred when Scott, eastbound on U. S. Highway 40 in Madison County, Illinois (a four-lane highway), drove his car across the center line onto the westbound lane in which plaintiff's car was traveling west. Scott's testimony was that he did so to avoid a westbound car coming toward him in his lane; but there is no issue raised on this appeal concerning negligence of Scott or contributory negligence of plaintiff, which was therefore settled by the verdict of the jury.

Scott was employed by Berlo as manager of its commissary department on a salary which was paid weekly. He worked at the Kiel Auditorium in St. Louis where Berlo sold food and beverages. He lived in Collinsville, Illinois, and drove each day between his home and place of work in his own car, over this highway. He received nothing for this use of his car but if he used it for trips for Berlo he was paid for such trips. His boss was Don Holt who was manager at the Auditorium for Berlo and was also manager for Raceway Concessions (hereinafter called Raceway), which sold food and beverages at the Fairmount Race Track. The two companies used some of the same equipment. The Fairmount Track held two meets each year, 40 days in the spring and 40 days in the fall. After each fall meet, Scott would go to Fairmount and get equipment used there by Raceway and bring it to the Auditorium and use it for Berlo; but a record of it was kept and it would be returned. Scott would be paid by Berlo his expenses for the use of his car for this purpose and also was paid by the hour for going over and coming back. Scott also worked as a maintenance man at the track; and he was sometimes paid by Raceway for work at the track. Scott also said that he had been paid one time when he had been told to stop by the track on his way home to pick up equipment. The connection between Berlo and Raceway does not otherwise appear as there was no evidence offered by defendants except medical testimony concerning plaintiff's injuries.

On the day the collision occurred, Saturday, March 31, 1956, Scott worked all day at the Auditorium. During the day, Holt told Scott and his assistant Singleton to come to the race track after finishing work at the Auditorium. Scott said this was the night before Easter and he was disgusted because he had to work late that night. The spring racing meet was to begin on April 27, 1956, and it usually took a considerable length of time to get things prepared for the opening. Scott drove by Fairmount, on Highway 40, every morning and evening, when he worked at the Auditorium. On the day of the collision, Singleton also drove his own car to Fairmount but it was not shown where he lived. The

collision with plaintiff's car occurred about 6:30 p.m. while Scott was on his way to Fairmount.

Berlo contends that Scott was using his car solely and entirely for his own personal purpose and convenience in driving where he did on Highway 40 because this was the way he would have driven home after finishing work at the Auditorium; and that no reasonable inference can be drawn from the evidence that Berlo had any right to control the operation of Scott's automobile, citing Corder v. Morgan Roofing Co., 350 Mo. 382, 166 S.W.2d 455, and Riggs v. Higgins, 341 Mo. 1, 106 S.W.2d 1. Berlo also argues that any service Scott may have intended to perform for his employer was only incidental and would not make this trip at the time of the collision within the scope of his employment, quoting from Boyer Chemical Laboratory Co. v. Industrial Commission, 366 Ill. 635, 10 N.E.2d 389, 392, 113 A.L.R. 264, the language of Judge Cardozo in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183, as follows: "If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk." Berlo also cites Canavan v. Canavan, 271 Ill.App. 558; Stokes v. Four-States Broadcasters, Inc., Mo.Sup., 300 S.W.2d 426; Curtis v. Juengel Const. Co., Mo.App., 297 S.W.2d 598; Randall v. Steelman, Mo.App., 294 S.W.2d 588; Mullally v. Langenberg Bros. Grain Co., 339 Mo. 582, 98 S.W.2d 645; Clawson v. Pierce-Arrow Motor Car Co., 231 N.Y. 273, 131 N.E. 914; Annotation, 51 A.L.R.2d 120, 138; A.L.I. Restatement of Agency 2d, Sec. 239.

These same facts were considered by the United States Court of Appeals, 8th Circuit, in Berlo Vending Co. v. Massey, 260 F.2d 832, in a suit by plaintiff's wife against Berlo, in which it was noted that "the applicable substantive law is that of Illinois." That court ruled as follows: "We think that the question whether Scott was, at the time of the collision, within the scope of his employment was, under the evidence, also a question of fact for the jury. This because his testimony, viewed in the light most favorable to the plaintiff, justified an inference that he was using his car on his employer's business. No evidence was produced by the defendant to refute such an inference. The failure of the defendant to produce evidence on the issue whether Scott was within the scope of his employment at the time of the collision would justify a conclusion that, if produced, it would not have been favorable to the defendant. See Meier v. Commissioner of Internal Revenue, 8 Cir., 199 F.2d 392, 396. Our conclusion is that the trial court did not err in denying the defendant's motion for a directed verdict. See and compare, Schumacher v. Rosenthal, 7 Cir., 226 F.2d 946; Jacks v. Woodruff, 9 Ill.App.2d 224, 132 N.E.2d 603, 605–607."

■ Our conclusion is that this ruling is correct on the evidence in this case. Scott answered "yes" to the following question: "Well, your boss, Don Holt, directed both you and Singleton to go from Kiel Auditorium to Fairmount Race Track?" Considered with the other facts shown, this would seem to warrant an inference that the employer's work required the travel involved. The cases relied on by Berlo involve different factual situations. In the New York case, from which Berlo took the quotation hereinabove set out, Judge Cardozo also stated: "If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own." 167 N.E. loc. cit. 183; see also A.L.I. Restatement of Torts 2d, Secs. 235–236. We do not think we can say that the evidence conclusively shows that the work of Berlo had no part in creating the necessity for the travel involved; and

we hold that the question of whether the work of Berlo created the necessity for the travel on this occasion was for the jury and that the court properly refused to direct a verdict for Berlo.

■ Berlo also claims error in sustaining plaintiff's objections to the following question and offer of proof:

"Question: And if on occasion, this 31st day of March, 1956, if you had not been requested to stop by the track, would you have driven your automobile at the same time and at the same place where this accident happened?"

An objection that this called for a conclusion on the part of the witness was sustained after an offer of proof that the witness would testify that he would have driven his automobile at the same time and at the same place on the trip home, had he not been requested to stop at Fairmount by his boss.

■ The question at least was speculative and argumentative and could be construed as calling for the conclusion that Scott would have driven his car at the place of the accident *at the same time* if he had not been requested to stop by the track. The exact time of reaching that spot would depend on many factors and there was no evidence to show what time Scott usually went home or whether he was on the road earlier or later than usual because of the direction to him to go to the track. He did say that he did not hurry to reach the track because he was a little mad about being required to work late that night. In any event, these rulings could not have been prejudicial. Berlo had a right to show and did show that in driving to the track Scott was taking the same route he always took in going home from work at the Auditorium. Scott had testified, before the question (above set out) was asked, where he lived, the route he took to go to and return from work, the location of the race track, that when he went home he "would go right by the race track"; and answered "yes" to

the following question: "And when you did go on your way home did you go by the particular place where this accident happened, even though you weren't going to stop at the track?" Therefore, this assignment is overruled.

■ Berlo also claims error in giving Instruction 3, submitting the issue of the employment of Scott, saying it fails to hypothesize sufficient facts and authorizes the jury to set up their own standard for determining his employment. It also says this instruction improperly hypothesizes facts on the issue of scope of employment and excludes from the jury's consideration essential evidence on this issue, apparently meaning to claim that facts not hypothesized are excluded. The criticized portion of this instruction is as follows: "[A]nd if you find that on said occasion John Scott was an employee of the Berlo Vending Company, a corporation, and at the time of said collision was driving on a direct route between the defendant Berlo Vending Company's St. Louis office and the Fairmount Race Track and that he was directed to proceed from the defendant Berlo Vending Company's St. Louis office to said race track by a superior employee of the defendant Berlo Vending Company and if you find that he was thereby engaged within the scope and course of his employment for the defendant at the time of the aforesaid collision."

■ The rest of the instruction hypothesized facts concerning the negligence charged. Berlo says the jury was permitted to find that Scott was acting in the scope of his employment on finding only: "(1) That John Scott was an employee of Berlo Vending Company on the occasion; and (2) At the time of the collision he was on a direct route from the Kiel Auditorium to the Fairmount Race Track; and (3) He was directed to go to the Fairmount Race Track by a superior employee of defendant Berlo Vending Company." Berlo argues that it was essential to hypothesize facts upon which the relationship of employee could be found; that evidence on the issue

of whether Scott was driving his car for his own purpose and benefit was excluded; and that the jury was prevented from considering the issue of whether or not Berlo had the right to control the operation of Scott's car. However, in addition to the facts above specified by Berlo, the instruction also submitted the ultimate fact of whether on the facts submitted Scott was engaged within the scope of his employment for defendant and it certainly did not state any erroneous rule of law. (See discussion of instructions involving scope of employment in Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35, 43; Cunningham v. Doe Run Lead Co., Mo.Sup., 26 S.W.2d 957, 960; Nagle v. Alberter, Mo. App., 53 S.W.2d 289, 293; Herrin v. Stroh Bros. Delivery Co., Mo.App., 263 S.W. 871, 876; Galba v. Payne, Mo.App., 253 S.W. 137, 139.) Furthermore, if Berlo deemed this situation "not to have been clearly or sufficiently hypothesized" it should have offered "a clarifying or amplifying instruction." Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 501. Instead of doing so Berlo requested and the court gave Instruction 1 using the same language concerning this ultimate fact, stating that plaintiff had the burden of proof "that John Scott was at the time of the collision in question an employee of the defendant, Berlo Vending Company, and acting within the scope of his employment." We, therefore, hold that Instruction 3 was not prejudicially erroneous for the reasons specified.

Berlo also claims error in giving Instruction 12, saying it allowed the jury to award damages for future loss of services without any evidence to support it, citing Seymour v. House, Mo.Sup., 305 S.W.2d 1, 6, concerning recovery for future earnings by one whose employment and compensation was "irregular" and speculative. Berlo says: "Any loss of service shown by the evidence was only temporary and had terminated before the time of the trial." However, in addition to the evidence of plaintiff's wife's injuries hereinafter stated in considering Berlo's claim of excessiveness,

plaintiff's witness, Dr. Woolsey, a neurosurgeon, said that Mrs. Massey had scar tissue in her brain which was a permanent thing from the healing of hemorrhages and that "since she left the hospital, she has complained of headaches moderately and some blurring of vision; of headaches back in the posterior portion of her head, some blurring of vision, some nervousness, considerable nervousness." He further testified as follows: "Question. Doctor Woolsey, in your opinion, will this young lady improve in the future? Answer. It has been a year and a half. You don't usually expect much improvement in something like this after that length of time. Question. Do I understand you correctly then, is it your opinion that her present condition will be with her for the rest of her life? Answer. I believe that her condition at the present time is permanent, if that is what you mean." Our conclusion is that there was substantial evidence to support a finding of damages for future loss of services and we hold it was not error to give Instruction 12 authorizing damages for future loss of services. See Oberhaus v. Eichwald, Mo.Sup., 303 S.W.2d 29, 31; Schaefer v. Rechter, Mo.Sup., 290 S.W.2d 118, 124; Crosby v. St. Louis County Cab Co., Mo. App., 320 S.W.2d 944, 949; Collier v. St. Louis Public Service Co., Mo.App., 298 S. W.2d 455, 461.

Berlo's final contention is that the verdict was excessive on both counts. Considering first the Count I verdict for plaintiff's own injuries, plaintiff was vice president and sales manager of a dairy and was 34 years old at the time of the trial. His job included public relations and required him to attend meetings and conventions and to entertain prospects. Plaintiff's right knee, wrist, forearm and chest were injured and he could not stand on his right leg after the collision. The other injuries cleared up but pain in his knee continued and he was unable to squat. His knee and leg would hurt if he drove a car 20 miles or more and prevented him from bowling. Plaintiff's knee was swollen for several

weeks and he still had to favor it in walking. Plaintiff's doctor, Dr. Bowers, who saw plaintiff and his wife soon after the collision, said there was atrophy of the muscles of the leg at the time of the trial and an enlargement of the patella; pressure on the outside of the knee caused pain and plaintiff was unable to sit through a movie without shifting around. Dr. Bowers' opinion was that this condition was permanent and would cause plaintiff pain and discomfort the rest of his life. Berlo had evidence of Dr. Funsch, who examined plaintiff before the trial, that he found no abnormal condition of his knee and no evidence of permanent impairment but he said plaintiff still could have had discomfort. Berlo cites Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015, 1023. In that case, as here, there were no fractures but the plaintiff sustained cuts on his head and wrist which required many stitches to sew up. We said: "Except for the scars on the head and wrist there is no * * * satisfying evidence of serious permanent injury;" and we required reduction of an $11,000 verdict to $7,500, the amount of plaintiff's verdict herein on Count I. Therefore, it would seem that this case would be authority for allowing the verdict herein to stand, particularly in view of the recognized decrease in the value of the dollar in the last eight years. Other cases in which $7,500 recovery was permitted for somewhat similar knee injuries are Keely v. Arkansas Motor Freight Lines, Mo.Sup., 278 S.W.2d 765, 771, and McGarvey v. City of St. Louis, 358 Mo. 940, 218 S.W.2d 542, 547. Therefore, considering as we must the evidence most favorably to plaintiff, we cannot say the verdict of $7,500 for plaintiff's injuries was excessive.

◼ Considering the Count II verdict for plaintiff's damages for loss of his wife's services, etc., it was shown that the amount he paid for medical and other expenses was $2,970.20 and that he would be required to pay about $1,300 more for future dental expenses, a total of almost $4,300. Before the collision Mrs. Massey, who was 32 at the time of the trial, had 26 teeth, 12 upper and 14 lower; and thereafter only 14 teeth, 5 upper and 9 lower. Part of the alveolar process of both jaws was broken out and the bone removed had to be replaced with filler to give shape to the mouth and have a base for the teeth. At the time of the trial she was using temporary dentures which would have to be replaced with more permanent ones after shrinkage. Dr. Bowers said Mrs. Massey had a basilar skull fracture and brain concussion with hemorrhages, was bleeding profusely from the mouth, and had many teeth knocked out. Most of the lower part of her face remained numb and her feet were injured and swollen so that she could not wear shoes. At the time of the trial, if she was on her feet for a day the swelling would return. She is unable to read books and papers or watch television because of blurry vision, which also causes nausea. She has been unable to go on trips with her husband and to conventions and social events with him, as she did before the collision. The X-ray report of the cervical spine showed fractures, with no separation, but a forward displacement of the fourth cervical vertebra on the fifth and also indicated injury to the ligaments of the left ankle. Because of these injuries Mrs. Massey was unable to stand and iron, move furniture or do heavy housework as she had previously done. Both parties cite Pandjiris v. Oliver Cadillac Co., 339 Mo. 726, 98 S.W.2d 978, in which a husband's verdict of $22,191.00 for loss of services was held excessive and a remittitur of $10,000.00 required, leaving the amount approved $12,191.00, of which $2,191.00 was for medical and other expenses. Berlo argues that the injury to the plaintiff's wife in that case was much greater; and the head injury therein was greater because that injury was caused by a brick falling from the third story of a building, causing a piece of bone to be detached on the top of her head which had to be removed leaving a depressed area without any bone over it. However, Mrs. Massey had other severe injuries to her face, jaws and mouth,

which Mrs. Pandjiris did not have, as well as a head injury severe enough to cause blurring of vision, and also spine and ankle injuries. Furthermore, the effect of the injuries upon the activities of Mrs. Massey and her ability to be helpful to her husband seems to be very similar to that stated in the Pandjiris case. Considering the amounts plaintiff herein has paid and will be compelled to pay for medical and other expenses, the amount awarded for loss of services, consortium, etc., is about the same as approved in the Pandjiris case 24 years ago when the purchasing power of the dollar was much higher. Viewing the evidence most favorably to plaintiff, we cannot hold that the verdict on Count II is excessive.

The judgment is affirmed.

All concur.