**Eunice GANT, Plaintiff-Appellant,**

v.

**Thomas SCOTT, Jr., Defendant-Respondent.**

**No. 32637.**

St. Louis Court of Appeals.

Missouri.

July 18, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 12, 1967.

Eaker & McGuire, Clayton, Sam Weber, St. Louis, for plaintiff-appellant.

Markus & Maue, Louis S. Czech, Clayton, for defendant-respondent.

SAMUEL E. SEMPLE, Special Judge.

Plaintiff sought damages of $7,500.00 from defendant for personal injuries alleged to have been sustained in a collision between her automobile and a car driven by defendant on May 12, 1964, in the 300 block of Natural Bridge Road in City of St. Louis. Defendant sought damages of $15,000.00 for personal injuries and property damages on his counterclaim. Trial to a jury resulted in a verdict and judgment in favor of defendant on plaintiff's claim and in favor of defendant and against plaintiff on defendant's counterclaim in sum of $4,500.00 for personal injuries and $500.00 property damages. After an unavailing Motion for New Trial plaintiff has perfected her appeal.

Defendant has filed a motion to dismiss the plaintiff's appeal for failure to

comply with Civil Rule 83.05(a) and (c), V.A.M.R. It is found that there is no such violation of the Rule which would justify dismissal of the appeal.

A statement of the facts as to the details of the accident is unnecessary as the only points presented by plaintiff on this appeal concern (1) the sufficiency of the evidence to establish a causal connection between the accident and the permanent injuries of defendant submitted to the jury and (2) that the verdict was excessive. When the collision occurred defendant bounced off the steering wheel and his right knee struck the car keys in the dash and broke the skin. He had pain in his chest, lip and right knee. He was taken to Homer G. Phillips Hospital for emergency treatment and thereafter went to his family physician, Dr. Kloecker, who treated him for over a year. Dr. Kloecker then sent him to Dr. Burst, an orthopedic specialist, who operated on the knee.

Defendant was off work for two weeks after the accident as his right knee was stiff, swollen and painful. During this period he could not bend his knee when sitting and used a support to walk. The swelling stayed for two or three weeks and after that the knee had swelling once or twice a week and it would be tender and sore and have a throbbing pain when the knee would swell.

Defendant went back to work about two weeks after the accident. His knee continued to bother him as it swelled quite often. His work required him to stand and he had to lift doors which weighed about 75 pounds. He was off work with regularity because of swelling in his knee and his family doctor gave him a knee guard to wear but when the knee swelled he would have to remove it. Defendant testified he was off work for seventy-seven days due to his knee swelling and hurting. Defendant testified he never had trouble with the knee prior to the accident on May 12, 1964.

Plaintiff introduced medical records of a Dr. Lansche and Dr. Piccione which stated that defendant was injured on July 21, 1964, while at work when he tripped over a floor mat and twisted his right leg. "His right knee, which he injured in an auto accident on 5/20/64, and which never completely healed, was re-injured when he fell this morning." Another record showed defendant injured at work on 9/4/64 "bumped right knee on a box and knee is painful * * * knee swollen and tenderness is present, walking aggravates pain in knee."

Defendant testified that on July 21, 1964 "I was walking to my station, my knee went out to the right, I reached for the table and tripped over a mat on the floor. * .* * It (the knee) went out to the right on me, it threw me off balance." Defendant further testified that on September 4, 1964 "I was walking through the same aisle where I work, my knee gave out, I had about a two foot clearance, and it struck the—a box in the aisle there."

Defendant was referred by his family physician to Dr. Burst who first saw defendant about May 19, 1965. Defendant complained of his right knee going out of place and dates this complaint going back to the automobile accident in May, 1964. That about a month after, he fell over a mat and had locking and swelling of the knee at that time and then had repeated episodes after that. That it went out of place about eight times or so and had some buckling of the knee. Dr. Burst advised defendant to either live with this condition or have surgery. Defendant decided to wait but then had surgery performed in July, 1965. Dr. Burst found "a typical bucket-handle tear" of the cartilage and removed the torn portion which was locked inside the knee. Dr. Burst testified that this undoubtedly had been causing the difficulty and it would cause the locking and buckling as defendant had complained. Dr. Burst testified in response to a hypothetical question as to whether the automobile

accident in May, 1964, was a competent producing cause of this injury to the knee: "Yes, it could be", and in assuming the same facts stated that the condition would be permanent.

Plaintiff contends that the expert testimony of Dr. Burst that the collision could be the cause of the permanent injury to defendant's knee did not constitute substantial evidence sufficient to submit the issue of permanent injuries to the jury. Plaintiff apparently contends that the permanent injury to defendant's knee could have resulted from defendant's falling at work on July 21, 1964, or on September 4, 1964, and that in view of Dr. Burst's testimony it was speculative as to whether or not it caused the injury. The cases cited by plaintiff apply the rule that expert testimony that a condition might or could have resulted from an accident, when standing alone and without other facts, is not substantial evidence from which a jury could find cause and effect. Bertram v. Wunning, Mo.App., 385 S.W.2d 803, 806; Kiger v. Terminal Railroad Association of St. Louis, Mo., 311 S.W.2d 5, 14; Immekus v. Quigg, Mo.App., 406 S.W.2d 298, 304. However, " '* * * An expert's view of possibility or probability is often helpful and proper. * * * Where there are other facts which tend to show an accident caused a certain condition, the assurance of an expert that it is scientifically possible is of some aid to the jury in determining what are reasonable inferences to be drawn from such facts.' " (Quoted in Ketcham v. Thomas, Mo., 283 S.W.2d 642, 649, from Kimmie v. Terminal Railroad Association of St. Louis, 334 Mo. 596, 66 S.W.2d 561, 565.)

■ There was substantial evidence from which the jury could find that prior to the automobile accident defendant's health was good and his knee was all right. That he had no prior injury to the knee and that it had never bothered him before the accident, that after the accident defendant suf-fered with the knee for over a year until Dr. Burst operated on it. There was evidence that in July, 1964, while at work defendant's knee went out and threw him off balance and as he reached for support tripped over a mat. The medical records of this incident showed that his right knee injured in an auto accident on 5/20/64 and which never completely healed was re-injured. There was also evidence that the knee went out in September while defendant was at work and it struck a box in the aisle. That defendant's knee went out of place eight times or so and he had some buckling. There was evidence that when Dr. Burst operated on the knee he found a typical bucket handle tear of the cartilage which had been causing defendant's difficulty and that such a condition would cause locking and buckling as defendant had complained. The testimony of defendant that his knee went out on him causing the incidents in July and September of 1964, and the medical records of those incidents, the evidence that prior to the automobile accident that he had no difficulty with his knee and only after the accident did his knee go out on him and the testimony of Dr. Burst as to the condition of the knee when he operated was not speculative and constituted substantial evidence of other facts from which a jury might find that the change in his condition was caused by the accident. Ketcham v. Thomas, supra; Lewis v. National Bellas Hess, Mo.App., 152 S.W.2d 674, 678; Stephens v. Guffey, Mo., 409 S.W.2d 62, 69. It is concluded that there was substantial evidence from which the jury could find that the accident was the cause of the condition of defendant's knee.

■ The above findings also dispose of the contention that the trial court erred in giving Instruction No. 11 (MAI 4.01) because it permitted the jury to award damages for future injuries to defendant's knee when there was no evidence that the collision was the cause of the permanent injury.

Plaintiff also contends that the use of the word "occurrence" in Instruction No. 11 was erroneous because there should have been substituted in lieu thereof a descriptive term which would properly limit the jury to the occurrence produced by the plaintiff citing the Notes on Use of MAI 4.01. This argument is apparently based on the theory that the evidence of defendant falling while at work twice after the automobile collision raised an inference that those incidents produced the ultimate injury to defendant's knee. This contention cannot stand in view of the evidence previously mentioned that defendant had never had trouble with his knee before the automobile accident and that afterwards his knee would lock, and go out on him and that on both occasions when he fell at work his knee went out and caused him to fall. There was no evidence to infer or indicate that anything but the automobile accident caused the injury to defendant's knee.

Plaintiff's final assignment is that the $4,500.00 verdict was excessive. Defendant, a 23-year-old man at the time of the accident, was employed as a cabinet assembler requiring him to be on his feet and lift doors weighing 75 pounds. He earned $85.00 per week. Defendant testified that because of his injured knee he was off work over 70 working days and presented testimony that he incurred medical and hospital expenses in excess of $700. The evidence showed that he suffered pain and discomfort for over a year after the accident until Dr. Burst operated on the knee and that since the operation he still had trouble kneeling and stooping. Dr. Burst testified that he has some permanent disability after the operation and that he will have some loss of 100 per cent capability of his knee.

The question of excessive damages is generally difficult. There is no mathematical formula by which it may be determined whether and how much a verdict is excessive. Each case must be decided on its own peculiar facts. Myers v. Karchmer Co., Mo., 313 S.W.2d 697, 711. Due regard should be given to the purchasing power of the dollar and to the rule of reasonable uniformity of awards for similar injuries. Glowczwski v. Foster, Mo.App., 359 S.W.2d 406, 413. In considering the evidence in this case in the light most favorable to the defendant as is required [Massey v. Berlo Vending Co., Mo., 329 S.W.2d 772, 778; Fann v. Farmer, Mo.App., 289 S.W.2d 144, 150], it is concluded that the verdict of $4,500 is not excessive. This view finds support in other cases where somewhat similar injuries supported awards in excess of the verdict in this case. Massey v. Berlo Vending Co., supra; Keely v. Arkansas Motor Freight Lines, Mo., 278 S.W.2d 765, 771; McGarvey v. City of St. Louis, 358 Mo. 940, 218 S.W.2d 542, 547.

The judgment should be and is affirmed.

ANDERSON, P. J., and WOLFE, J., concur.